NATIONAL LABOR RELATIONS BOARD

v.

STANOLIND OIL & GAS CO.

No. 4651.

United States Court of Appeals Tenth Circuit.

Nov. 11, 1953.

---

Robert H. Hurt, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Assoc. General Counsel, A. Norman Somers, Asst. Gen. Counsel, and Samuel M. Singer, Washington, D. C., on the brief), for petitioner.

Karl H. Mueller, Ft. Worth, Tex. (J. W. Howard, Tulsa, Okl., and Harold E. Mueller, Ft. Worth, Tex., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

After a representation hearing on the petition of Oil Workers International Union, CIO, pursuant to Section 9(c)(1) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., the National Labor Relations Board found that Stanolind Oil and Gas Company's Elk Basin repressuring plant employees constituted an appropriate bargaining unit within the meaning of Section 9(b) of the Act. And after an election under Section 9(c)(1)(B) in which the Union was successful, the Union was certified as the collective bargaining representative for the employees in the unit.

When Stanolind refused to bargain collectively with the Union as the representative of the defined unit, the Board conducted a complaint hearing under 10(b) of the Act, pursuant to which it again determined that the employees in Stanolind's Elk Basin repressuring plant constituted an appropriate bargaining unit within the meaning of Section 9(b); and that by refusing to bargain collectively with the Union as representative of the unit, Stanolind was guilty of unfair labor practices in violation of Section 8(a)(5). When Stanolind refused to comply with the Board's conventional orders based upon its findings and conclusions, the Board brought this 10(e) enforcement proceedings.

Stanolind's refusal to bargain is based solely upon its contention made throughout the proceedings that the employees in the Elk Basin repressuring plant are not an appropriate bargaining unit, and that the findings of the Board to that effect are clearly arbitrary and capricious and without adequate support in the record. That is the sole issue for determination here.

Under Section 9(b) of the Act, "the Board may decide that all employees of a single employer form the most suitable unit for the selection of collective bargaining representatives, or the Board may decide that the workers in any craft or plant or subdivision thereof are more appropriate." Pitts-

burgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 152, 61 S.Ct. 908, 912, 85 L.Ed. 1251. The determination of an appropriate bargaining unit necessarily involves a "large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040. The judicial function is confined to a guaranty against arbitrary and irrational Board action. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456; May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 66 S.Ct. 468, 90 L. Ed. 495; National Labor Relations Board v. Williams, 4 Cir., 1952, 195 F.2d 669; National Labor Relations Board v. Tri-State Casualty Ins. Co., 10 Cir., 1951, 188 F.2d 50; National Labor Relations Board v. Continental Oil Co., 10 Cir., 1952, 179 F.2d 552.

The evidence before the trial examiner showed that Stanolind has divided its oil producing operations into four geographical and organizational divisions, which are subdivided for functional purposes into districts, then into areas embracing groups of producing fields and facilities. Its Elk Basin repressuring plant is in the Big Horn Basin-Lander District of the Producing Department in the Rocky Mountain Division. This division, with its offices at Casper, Wyoming, embraces all of Stanolind's operations in Montana, Colorado, Utah, and Western Nebraska, and employs approximately 523 production workers.

Stanolind shows a history of division-wide collective bargaining since 1937 and 1938 in its other three divisions. And Board decisions in two of these divisions reveal approval of division-wide bargaining units on the basis of factors also appearing in this case. The Board did approve a plant employee unit in Stanolind's Salt Creek Field in the Rocky Mountain Division in 1937. But

Stanolind explains that this unit was approved as appropriate purely on the basis of the organization of the employees in the plant, a factor no longer controlling under the 1947 amendment which provides, "In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling." 29 U.S.C.A. § 159(c)(5). The plant employees at Stanolind's Brownsville, Texas chemical plant were also approved as an appropriate unit but those employees were not in Stanolind's divisional organization.

There was evidence showing the functional integration of operations between the Elk Basin plant and field. The main function of the plant is to repressure the Elk Basin oil reservoir. Oil and gas from producing wells in the Elk Basin Field flow through pipe lines to separators, where the oil and gas are separated, the oil being stored in tanks and the gas being transported by means of pipe lines to the repressuring plant. The gas undergoes various processes at the plant resulting in the production of gasoline, propane, butane and sulphur. The remaining gas is burned, and the inert gas resulting from the combustion is pumped to and through injection wells to the gas cap of the oil producing reservoir for the purpose of increasing the ultimate recovery of oil. Throughout this process a close coordination between the field and plant is maintained to assure that the required amount of gas is being injected to produce the desired amount of oil and gas. Pumping units on the wells in the field are powered by electric motors operated by electrical energy supplied by the plant. Repressuring is considered a producing operation, the cost of which is charged to the wells. The recovery of sulphur, gasoline, propane and butane is only incidental to the repressuring process.

Centralization of management and supervision is shown by evidence of division-wide organization with the division

manager exerting control over the entire divisional set-up, with full authority to bargain collectively and make final decisions in matters of grievance. The superintendent of the plant receives applications for employment but passes them on to the district office for approval. Labor policies, job classifications, wage rates and employee benefits are uniform throughout the Rocky Mountain Division, and job opportunities and job security are division-wide. Personnel and payroll records for all employees in the division are maintained at the division office. All industrial relations are also handled from that office.

Stanolind contends that functional integration and centralized management found only in its defined geographical divisions are the rationally acceptable factors for determining the bargaining unit. And pointing to the Board's historical acceptance of these factors in the determination of appropriate bargaining units, it earnestly insists that the Board cannot ignore them in this case. See the Sixteenth (1951) and Seventeenth (1952) Annual Reports of the Board enumerating principal factors considered by the Board in cases of this kind.

But, in determining Stanolind's plant employees to be an appropriate unit, the Board relied upon other determining factors which it has likewise utilized in these cases. The Board found the plant employees to be a relatively stable, integrated, cohesive group, with distinctive work functions, separate supervision from the field employees, with different employment and working conditions; that the plant partook of the nature of a manufacturing plant; and that there was little interchange of employees between the field and the plant except in emergencies. In addition, the Board noted that there had been no bargaining for employees of the Rocky Mountain Division, and no other unit sought to represent the division-wide unit.

In making its findings, the Board considered testimony of Stanolind's plant superintendent to the effect that normally there is no interchange of employees between the plant and the field except in emergencies and when specialized help is needed in the field from those in the plant. The plant has its own specialized workers, better acquainted with their own work. He testified the pipe lines from the producing wells to the separators are maintained by the field force, while the lines from the separators to the plant and from the plant to the injection wells are maintained by plant employees.

The division manager testified that the plant has its own supervision by the plant superintendent, although both field and plant are under overall control of the division manager. The plant superintendent receives applications and recommends hiring for the plant to the division office. He does the mechanical hiring of employees, subject to supervision. Vacancies in the plant are normally filled by a qualified plant employee, and vacancies in the field by a qualified field employee. Plant and field offices are separate and plant employees report to work at the plant, whereas field employees report to work at a garage in the central part of the field. Separate time sheets are maintained for plant and field employees. In publications of the Respondent, the Elk Basin plant had been designated a "natural gasoline plant" and a "manufacturing plant". In sum, there was substantial evidence showing insignificance of employee interchange, distinction in work functions, separate supervision, separate methods of filling vacancies, and different conditions of employment.

On the whole record, we think the Board acted within its broad discretionary power in designating Stanolind's plant employees as the appropriate bargaining unit.

The order will be enforced.