**BANCO CREDITO y AHORRO PONCENO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 7001.**

United States Court of Appeals First Circuit.

March 7, 1968.

William Lespier and Miguel Palou Sabater, Hato Rey, P. R., with whom Cohen & Lespier, Hato Rey, P. R., was on brief, for petitioner.

Norton J. Come, Asst. Gen. Counsel, with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Asst. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Nancy M. Sherman and Leon M. Kestenbaum, Washington, D. C., Attorneys, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

The petitioner, Banco Credito y Ahorro Ponceno (Bank), of Puerto Rico, seeks to set aside a National Labor Relations Board order based on a finding that the Bank had violated sections 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., in refusing to recognize and bargain with International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, District Lodge 3 of Puerto Rico, AFL-CIO (Union). The Board seeks to enforce the same order.

The Bank's major contention is that it was not obligated to bargain with the Union, even after election and certification, because the Board had improperly designated the employees of one of its 29 branches—Arecibo—as an appropriate bargaining unit. The Bank argues that the evidence of its island-wide, integrated, centrally controlled system, with uniform policies and standards and corresponding lack of authority in local branch managers precluded the Board from making substantiated findings that one branch was an appropriate unit. It also charges the Board with failure to articulate its rationale and with inconsistency in designating, following a consolidated representation hearing, 13 branch offices in the San Juan metropolitan area as another appropriate unit.

Despite the length of briefs and record, the relevant facts can be briefly summarized. The Bank's Board of Directors and Operations Committee determine policy including labor relations policy. Services are administered from centralized departments, most of which are in San Juan. Branches must make daily reports of cash positions. Check clearance is of course done centrally. Branch managers have no decision-making authority over FHA and construction loans and must adhere to consumer loan limits set by the Board and, in the case of employee loans, to $1,000. Employees are under a bank-wide classification system, with uniform salaries, hours, and fringe benefits.

Branch managers, on the other hand, supervise employees on a day-to-day basis, recommend employees for pay increases, promotions, transfers, discipline, and discharge. While this authority is described as that of recommending, a bank witness had heard of only three or four cases in one year where the branch manager's recommendations were not followed. Branch managers have the responsibilities of explaining new policies to employees, assigning overtime work, establishing vacation schedules, and resolving minor employee grievances.

The Arecibo branch is almost forty miles from San Juan and is reached by automobile in one to one and a quarter hours. It is sixteen miles from the nearest branch office. Of 206 employee transfers in two and one half years, only two involved Arecibo. Unlike some other branches, Arecibo does its own record-keeping and posting.

The Bank, on these facts and at this appellate stage, faces a most difficult task. It cannot succeed only by demonstrating that a system-wide unit would be appropriate but must also show that a branch unit is clearly not appropriate. Mueller Brass Co. v. NLRB, 86 U.S.App.D.C. 153, 180 F.2d 402 (1950). The broad discretion lodged in the Board, the limited scope of review, the Act's policy of assuring freedom to employees in exercising their right to organize all add to the task. In this case we cannot say that the Board's decision was not supported by evidence, misconceived the law, was an abuse of its discretion, or was inadequately articulated. See General Instrument Corp. v. NLRB, 319 F. 2d 420, 422 (4th Cir. 1963), cert. denied, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964).

The real albeit limited authority of the branch manager as to matters of immediate importance to employees, the relative remoteness of the branch, the almost complete absence of interchange of personnel between Arecibo and other parts of the system together justify the Board's designation of the Arecibo unit.

Our own decision in NLRB v. Purity Food Stores, Inc., 376 F.2d 497 (1st Cir.), cert denied, 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368 (1967), does not stand for the proposition that central policy-making in a chain precludes a single unit determination. The facts before us relating to the management and labor situation in the Arecibo branch are more comparable to those in such cases as NLRB v. Sun Drug Co., 359 F.2d 408 (3d Cir. 1966); NLRB v. Merner Lumber & Hardware Co., 345 F.2d 770 (9th Cir. 1965); NLRB v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6th Cir. 1965); Harris Langenberg Hat Co. v. NLRB, 216 F. 2d 146 (8th Cir. 1954); and NLRB v. Stanolind Oil Co., 208 F.2d 239 (10th Cir. 1953), none of which was reckoned with in the Bank's briefs.

That the Board saw fit to designate 13 branches in the San Juan metropolitan area as a "clearly defined, geographically coherent grouping sufficiently inclusive and compact to make collective bargaining in a single unit feasible" does not manifest any inconsistency with its Arecibo decision. See NLRB v. Frisch's Big Boy Ill-Mar Inc., 356 F.2d 895, 896 n. 3 (7th Cir. 1966). We note that over half of the Bank's total employee transfers over the period we have referred to occurred within this area.

The Bank also challenged the election which was held subsequent to the designation of the Arecibo unit on the ground that the Board agent conducting the election entered the Bank on the day of election in the company of two Union representatives, and asked both the officials of the Bank and representatives of the Union to leave the premises during the election. The Bank also complains that it was entitled to a hearing in the unfair labor practice proceeding because it wished to challenge the authenticity of letters purporting to state why it was doing what it obviously did, i. e., refuse to bargain. These arguments we pass as being the by-products

of understandable, if unrestrained, advocacy.

Petition to review and set aside the Board's order is denied and said order may be enforced.