**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PAN AMERICAN PETROLEUM CORPORATION, Respondent.**

**No. 287-70.**

United States Court of Appeals, Tenth Circuit.

June 21, 1971.

Lawrence H. Pelofsky, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Herman M. Levy, Atty., N. L. R. B., Washington, D. C., were with him on the brief), for petitioner.

J. W. Howard, Tulsa, Okl., (J. P. Hammond, Tulsa, Okl., of counsel with him on the brief), for respondent.

Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

The National Labor Relations Board seeks enforcement of an order issued Oc-

tober 16, 1969, which would require respondent to bargain collectively with the Independent Oil Workers Union, Local 16, as the exclusive bargaining representative of the company's production, operating and maintenance employees, including gas technicians, in the producing department of the employer's Farmington Area at Farmington, New Mexico. Respondent admits its refusal to bargain, but denies the commission of an unfair labor practice under section 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., by asserting that the Board did not validly determine and certify an appropriate bargaining unit.

Section 9(b) of the Act provides that "[t]he Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for collective bargaining shall be the employer unit, craft unit, plant unit, or subdivison thereof * * *." The courts have uniformly recognized that this section gives the Board wide discretion in determining the appropriate bargaining unit in each case and that such determination will not be set aside by the reviewing court unless it is arbitrary or capricious. *See, e.g.,* Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040; Mountain States Tel. & Tel. Co. v. N. L. R. B., 10 Cir., 310 F.2d 478, 479–480.

Pan American Petroleum Corporation, formerly Stanolind Oil and Gas Company, is engaged in the exploration for and production of oil and gas. The company's operations are divided into four geographical and organizational divisions, which are subdivided into districts and then into areas containing groups of producing fields and facilities. The Farmington Area, with which we are primarily concerned, maintains an office at Farmington, New Mexico. It embraces Nevada, Arizona, the western half of New Mexico, and parts of Colo-

rado and Utah. Organizationally, it is a part of the Denver Division.

The evidence in this case shows that operations are largely centralized on a division basis with the division manager exerting overall control from the division headquarters in Denver, Colorado, including the authority to bargain collectively and make final decisions in matters of grievance. The division headquarters authorizes the drilling of wells throughout the division; selects the drilling contractors and awards the contracts for such operations; and handles the legal work, financing, programming and purchasing for the entire Denver Division. Labor policies, job classifications and employee benefits are uniform throughout the division, and job opportunities and job security are division-wide.

The stability of the Denver Division is reflected in its existence as a continuing organizational entity for more than thirty-four years. In contrast to this stability, area boundaries are frequently changed depending on operating problems and efficient use of personnel, and areas may be discontinued entirely through consolidation with other organizational entities. Employees are frequently transferred between areas within the Denver Division.

Pan American contends that the above evidence, especially that showing centralized control, compels the finding that the only unit appropriate for collective bargaining is one which includes employees throughout the Denver Division. *Cf.* NLRB v. Pinkerton's, Inc., 6 Cir., 428 F.2d 479; NLRB v. Davis Cafeteria, Inc., 5 Cir., 396 F.2d 18; NLRB v. Frisch's Big Boy Ill-Mar, Inc., 7 Cir., 356 F.2d 895. But in NLRB v. Stanolind Oil & Gas Co., 10 Cir., 208 F.2d 239, 242, we rejected a similar argument made by this same company:

Stanolind contends that functional integration and centralized management found only in its defined geo-

graphical divisions are the rationally acceptable factors for determining the bargaining unit. And pointing to the Board's historical acceptance of these factors in the determination of appropriate bargaining units, it earnestly insists that the Board cannot ignore them in this case. See the Sixteenth (1951) and Seventeenth (1952) Annual Reports of the Board enumerating principal factors considered by the Board in cases of this kind.

But, in determining Stanolind's plant employees to be an appropriate unit, the Board relied upon other determining factors which it has likewise utilized in these cases. The Board found the plant employees to be a relatively stable, integrated, cohesive group, with distinctive work functions, separate supervision from the field employees, with different employment and working conditions; that the plant partook of the nature of a manufacturing plant; and that there was little interchange of employees between the field and the plant except in emergencies. In addition, the Board noted that there had been no bargaining for employees of the Rocky Mountain Division, and no other unit sought to represent the division-wide unit.

■ The record in this case establishes that the designated unit consists of a stable, identifiable group of unrepresented employees who work in a rather isolated geographic location, and however much the evidence points to the desirability of division-wide collective bargaining, it is nevertheless within the broad discretion of the Board to determine that the lesser unit is also appropriate. *See* NLRB v. Groendyke Transport, Inc., 10 Cir., 417 F.2d 33; Banco Credito y Ahorro Ponceno v. NLRB, 1 Cir., 390 F.2d 110; Mountain States Tel. & Tel. Co. v. NLRB, *supra.*

The Farmington Area has remained a relatively stable administrative and geographic subdivision of the company's operations since its creation as a district on January 1, 1961. Up to the time of the proceedings before the trial examiner on November 8, 1968, the Farmington Area was affected by only one of some sixty-three organizational and geographic changes made in the company's domestic divisions. This change, occurring on August 1, 1965, involved merely a shift of the geographic area from what is now the Fort Worth Division to what is now the Denver Division and a reclassification from "District" to "Area." A second change, occurring subsequent to the 1968 hearing, enlarged the boundaries of the Farmington Area to include the State of Nevada. As the Board pointed out, however, the change has not affected the overall supervisory structure of the company from area to district to division nor has it been shown to affect the stability of the employee group in the Farmington Area.

■ The operations in the Farmington Area are conducted by a crew of approximately twenty-five hourly paid employees in the classifications of pumper, special pumper-isolated, roustabout and operations technician. The union seeks to represent these employees as well as three nonsupervisory gas technicians, whose job is to test and verify the volume of production from the various wells. The company argues that the gas technicians should not be included in the unit since they have no mutuality of interest in wages, hours and working conditions with the other production employees and are excluded from the producing department units in the other three divisions. Although the gas technicians are salaried, unlimited hour employees with separate supervision and separate offices from the other unit employees, the evidence also shows that the gas technicians must perform much of their work at the wellhead in collaboration with the pumpers and that some of the gas technicians were formerly pumpers that have been elevated to their new classification. This close contact between the gas technicians and the pump-

ers makes the inclusion of the gas technicians in the unit at least a debatable question and therefore within the Board's discretion. *See* NLRB v. Dewey Portland Cement Co., 10 Cir., 336 F.2d 117.

The stability of the employee group sought to be represented is demonstrated by the limited number of transfers actually involving the Farmington Area. Although the company established that during a ten-year period there had been approximately one hundred transfers of hourly paid employees between areas generally in the Denver Division, only three of these transfers during the last three years were into or out of the Farmington Area, and all of these were pursuant to employees' requests and not company needs. The company also showed overall integration of operations and centralized control from Denver, but the Farmington production employees nevertheless appear to be significantly distinct from similar employees throughout the division. The pumpers and gas technicians perform a portion of their daily work at the area headquarters in Farmington, New Mexico, which the evidence indicates is over two hundred miles from any of the company's other work locations. The employees, except for one gas technician, are supervised in their day-to-day activities by the area superintendent, the area foreman, and six field foremen, all of whom are located in the Farmington Area.[1] These immediate supervisors also administer the first steps in the company's grievance procedure. And finally, although division-wide bargaining has been the rule in the company's other three divisions, there is no history of collective bargaining on a division basis in the Denver Division. To the contrary, the Board has found appropriate, and we have approved, less than division size units within the Denver Division. Stanolind

Oil and Gas Co., 116 NLRB 1208; Stanolind Oil and Gas Co., 98 NLRB 973, enforced, 10 Cir., 208 F.2d 239.

Taking into account all the above factors, the Regional Director in the instant case found that the unit sought is comprised of "a stable and identifiable group of employees with common interests and is therefore appropriate." There is substantial evidence to support this conclusion.

■ The company contends, however, that the Board has reversed its earlier position as to the inappropriateness of area units without articulating reasons for the change. The integrity of the administrative process does require that the Board distinguish apparently inconsistent findings in cases involving the same employer. *See* NLRB v. Groendyke Transport, Inc., 10 Cir., 372 F.2d 137, cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 993. But a close examination of the cases cited by respondent convinces us that the Board has made no unexplained repudiation of past policy as regards this company.

Respondent focuses strongly on the case of Stanolind Oil and Gas Co., 58 NLRB 412, where the Board determined that two area-wide units were inappropriate "[i]n view of the tentative character of the area lines, the frequent interchange of employees, and the uniformity of working conditions and policies throughout the Division * * *." This decision established a pattern for denying less than division-wide units in two subsequent unreported cases by the Board. The pattern was broken, however, not in the present case but in Stanolind Oil and Gas Co., 98 NLRB 973, enforced, 208 F.2d 239, and Stanolind Oil and Gas Co., 116 NLRB 1208.

In these two cases the Board approved units of production and maintenance em-

---

[1] The third gas technician reports to the area engineer, whose location in the company hierarchy is not identified in the record.

ployees at the company's Elk Basin and Salt Creek gas recycling plants within what is now the Denver Division. The company made essentially the same arguments against less than division-wide units that it is making here but without success. The Board adequately distinguished its earlier decision:

"We note that (1) interchangeability of employees and (2) flexibility of area boundaries within divisions due to decline or increase in crude oil production were stressed by the Board in its original decision, which—by dismissing a petition for two areas out of a division—set the pattern of division-wide bargaining. In the current proceeding interchange is not present and flexibility of area boundaries offers no reason for denying separate representation to a relatively stable group of plant employees." 98 NLRB at 975–76.

In the instant case, the Regional Director found that a similar distinction exists with respect to the Farmington Area—there is little, if any, interchange of Farmington employees, and at the time of the hearing there were no definite plans to change the boundaries of the Farmington Area, thereby upsetting the stability of the unit sought. The company later petitioned the Board for a new hearing, claiming that the boundaries of the Farmington Area have been enlarged to include the State of Nevada. The Board concluded that a new hearing was unnecessary since a mere change in the geographic scope of the unit did not affect the original finding that the Farmington Area represented "a stable and identifiable group of employees with common interests." In this case, as in the prior cases involving the company's plant employees, the Board has sufficiently addressed itself to the significant factors of employee interchange and flexibility of area boundaries that were relied upon in the Board's original decision.

The order will be enforced.