**MAGIC PAN, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1982.

United States Court of Appeals, Seventh Circuit.

Argued May 2, 1980.

Decided Aug. 11, 1980.

Kathleen M. Kelly, San Francisco, Cal., for petitioner.

Catherine Garcia, N.L.R.B., Washington, D. C., for respondent.

Before SPRECHER and WOOD, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

The petitioner Magic Pan, Inc. (Magic Pan) petitions for review of a decision and order of the National Labor Relations Board (the Board) finding that Magic Pan had improperly refused to bargain with the Amalgamated Clothing & Textile Workers Union (the Union), the certified exclusive representative of the employees at one of Magic Pan's restaurants.

The Board cross-applies for enforcement.

Although the alleged unfair labor practice occurred in Washington, D. C., this Court has jurisdiction because Magic Pan transacts business through its head office in the Seventh Circuit. 29 U.S.C. § 160(f).

FACTS

Magic Pan is a San Francisco based corporation which runs a nationwide chain of substantially identical restaurants. The chain is divided into administrative regions and into smaller areas under the supervision of an area manager. The Washington area consists of five restaurants located in Washington, D. C., Virginia, and Maryland. Operations are supposed to be uniform nationally, and Magic Pan establishes guidelines on food preparation and display, restaurant operations, and labor relations policies.

The restaurant involved in this case (known as the Jenifer Street restaurant) is located in Washington, D. C. It has a manager, assistant manager, and relief manager. The parties dispute the respective authority of the restaurant manager and the area manager.

On March 25, 1977, the Union filed a representation petition seeking certification as the collective bargaining representative of specified employees at the Jenifer Street restaurant. Magic Pan argued that the unit was inappropriate because it excluded the other Magic Pan restaurants in the Washington area. The Acting Regional Director decided on July 20, 1977 that the single-restaurant unit was inappropriate. The Board, however, granted the Union's request for review, reversed the Acting Regional Director, and directed an election. 234 NLRB 1.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

On January 27, 1978, an election was held, and the Union won by a vote of 37 to 36. Five challenged ballots were discounted, and one was void because both boxes had been marked. Magic Pan filed 46 objections. The Regional Director's supplemental decision and revised tally of ballots of June 7, 1978 recommended that all objections be overruled and that the Union be certified. Magic Pan requested review, and the Board denied the request, except for objections 11, 21, and 24 as to which it ordered a hearing. The Hearing Officer recommended that these objections be overruled. The Board adopted the Regional Director's and the Hearing Officer's findings and recommendations and certified the Union on January 11, 1979.

On January 26, 1979, the Union requested bargaining, was refused, and filed an unfair labor practice charge on March 2. The Regional Director issued a complaint on March 29. On May 3, 1979, the General Counsel moved to transfer the case to the Board and for summary judgment. The Board transferred the case to itself and directed Magic Pan to show cause why summary judgment should not be granted. Magic Pan responded on May 29, and on August 24, 1979, the Board issued its decision and order granting General Counsel's motion for summary judgment and finding Magic Pan's refusal to bargain a violation of § 8(a)(5) & (1). 244 NLRB No. 97. The Board found that all the issues raised by Magic Pan were or could have been litigated in the prior representation proceedings and were thus not entitled to further litigation. *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251 (1941). Magic Pan filed its petition for review with this Court on August 28, 1979.

*ISSUES*

1. Was the election conducted in an appropriate unit?

2. Must the election be set aside because one non-English speaking voter did not understand the ballot?

3. Must the election be set aside because of comments by the Board's agent which allegedly expressed a pro-Union bias?

4. Is the certification invalid because of the involvement of Local 25, Hotel and Restaurant Employees & Bartenders Union (Local 25)?

*DISCUSSION*

*Issue 1—Appropriate Unit*

■ It is well settled that "[t]he issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). *Accord, NLRB v. Winnebago Television Corp.*, 440 F.2d 369, 370 (7th Cir. 1971). "In making its determination, the Board is not required to choose the most appropriate unit but only to choose *an* appropriate unit within the range of several appropriate units in a given factual situation." *Wil-Kil Pest Control Co. v. NLRB*, 440 F.2d 371, 375 (7th Cir. 1971) (emphasis in original). *Accord, State Farm Mutual Automobile Insurance Co. v. NLRB*, 411 F.2d 356, 358 (7th Cir.) (en banc), *cert. denied*, 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83 (1969).

Furthermore, the Board employs a presumption that a single restaurant, like single locations in multi-location enterprises, is an appropriate unit of bargaining. *Haag Drug Co.*, 169 NLRB 877 (1968). *Accord, NLRB v. Chicago Health & Tennis Clubs, Inc.*, 567 F.2d 331, 335–36 (7th Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Walgreen Co. v. NLRB*, 564 F.2d 751, 753–54 (7th Cir. 1977).

Thus, the question before this Court is simply whether the unit found by the Board is appropriate, not whether another unit might have been more appropriate. *NLRB v. Kostel Corp.*, 440 F.2d 347, 349 (7th Cir. 1971).

In reviewing the Acting Regional Director's decision that the unit here was inappropriate, the Board concluded:

"In view of the foregoing, we find, contrary to the Acting Regional Director, that the presumptive appropriateness of a single-store unit has not been rebutted.

While it is clear that the Employer has centralized national and area administrative control over all its restaurants in such matters as decor, menus, food preparation, advertising, purchasing, storage, and maintenance of food and equipment, we find that such centralized administration does not preclude meaningful collective bargaining at the Washington, D. C., restaurant. Here, in our opinion, the Washington restaurant manager has effective control over the matters which most directly affect the restaurant's employees. The employees perform their work under the manager's direct supervision, and look to him for guidance. He has the authority to effectively hire, discharge, discipline, adjust wages within a prescribed range, and act in other ways which control their status and working relationships. Moreover, we find that the Washington restaurant has a stable and permanent labor force which is not weakened by occasional permanent or temporary transfers. In addition, it is clear that the Washington restaurant is a separate economic entity, serving its own market area, geographically separated from the Employer's other restaurants.

"For the above reasons, together with the absence of any bargaining history, and the fact that no labor organization seeks to represent the employees in a broader unit, we find that a unit limited to the employees of the Employer's Washington, D. C., restaurant is an appropriate unit for collective bargaining." (Footnotes omitted). *Magic Pan, Inc.,* 234 NLRB 1, 2–3 (1977).

We are satisfied from our search of the records that the Board's findings and conclusions are supported by substantial evidence and in accordance with the law. Apparent inconsistent prior decisions of the Board are washed out with the divergence of the facts of each case involved. The Board's decision on that aspect of the case was not arbitrary or capricious.

*Issue 2—Non-English Speaking Voter*

Employee Philomene Jean is a native of Haiti and speaks only Creole. Florence Morris, who works with Jean making salads, has developed a way of communicating with Jean through use of gestures and the few English words that she knows Jean understands. Jean testified through an interpreter before the Hearing Officer that she knew what the election was about and that she had intended to vote against the Union. Neither the Union nor Magic Pan had notified the Board that any employees would have difficulty understanding the English notices and ballots.

When Jean attempted to bring Morris with her into the voting area, the Board's agent forced Morris to leave because only one voter was allowed in the area at a time. The agent gave Jean the same instructions he gave everyone before she entered the voting booth, but she left the booth without marking her ballot and visibly confused. The testimony differs as to how the agent instructed her at this point, but whatever the instructions were, Jean did not understand them. She then returned to the booth, marked the ballot, folded it, and put it in the box. After consulting Morris, she realized she had marked the ballot incorrectly. The two women returned to the voting area and tried to get another ballot for Jean but they were told it was too late because she had already voted. The agent was correct in that statement and action. *T & G Mfg., Inc.,* 173 NLRB 1503, 1504 (1969); *Great Eastern Color Lithographic Corp.,* 131 NLRB 1139, 1140–41 (1961).

Although Magic Pan assumes that the void ballot with both boxes marked was Jean's, she has never stated to any one that she marked both boxes. She could merely have marked the "yes" box instead of the "no" box as she intended.

■ The Hearing Officer noted that only one employee did not understand English and stated that since Magic Pan was the party most aware of Jean's language problem, it had the responsibility to notify the Board's agent prior to the election so that arrangements could be made, citing *King's River Pine,* 227 NLRB 299 (1976); *Alamo Lumber Co.,* 187 NLRB 384 (1970).

■ The Hearing Officer found that Morris could not have explained the ballot any better than the Board agent did and concluded that for Morris to show Jean how to vote would have been clearly inappropriate. The Board's requirement of complete secrecy of the ballot cannot be waived. *J. Brenner & Sons, Inc.*, 154 NLRB 656, 659 n.4 (1965). Also, the rule of *Michem, Inc.*, 170 NLRB 362 (1968), prohibits individuals from electioneering in the voting area.

We are satisfied that the Hearing Officer's findings are supported in the record by substantial evidence and the Board's adoption thereof was proper. Credibility of testimony is for the trier of fact to evaluate.

*Issue 3—Bias by Board Agent*

■ The Board's agent Joel Cohn and the Union's observer Terez Touhey happened to be seated next to each other and had a casual conversation. They were discussing their prior jobs, etc., and Cohn did tell Touhey that he had worked at a legal clinic that handled divorces, landlord-tenant, and worker's compensation matters for members of Local 25 and that he had seen two members of that union at the restaurant that morning.

Cohn testified he did not think his remarks could be interpreted as either pro-union generally or pro-ACTWU, the union involved in the election. Furthermore, all witnesses agree that no voter was present during the conversation, and all of the observers had already voted, so the remarks could not have affected the outcome.

Magic Pan's charge that agent Cohn made comments to observer Touhey indicating pro-union bias is frivolous.

*Issue 4—Local 25's Involvement*

Magic Pan suggests that we should review each and all of their original 46 objections to the election. We decline to do so except for issue 4 in which the basis of assignment 42 reappears. Simply stated, the issue's mainspring is Magic Pan's assertion that the Union's certification was invalid because the Union was actually fronting for another union, Local 25.

■ A party seeking a post-election hearing must show that there are substantial and material issues of fact which can be resolved only after a hearing and must do more than question the interpretations and legal conclusions drawn from the facts by the Regional Director. *Macomb Pottery Co. v. NLRB*, 376 F.2d 450, 452–53 (7th Cir. 1967).

■ The Regional Director concluded from his investigation that the Union did not act as a front for Local 25. He found that members of the employee organizing committee had approached Ronald R. Richardson, Executive Secretary-Treasurer of Local 25, between July 20 and 30, 1977 and asked if Local 25 could help them in their organizing efforts. He replied that he would need authorization from the Union, ACTWU. The Union agreed to authorize Richardson and his designees to act as its agent.

> "Thus, Richardson would act on behalf of ACTWU in matters concerning election processes, unfair labor practices, collective bargaining and contract enforcement. It was further agreed at this meeting that ACTWU would remain as the petitioner for the Magic Pan employees, that Magic Pan employees would be ACTWU members, that all dues and other fees would be payable to ACTWU and that ACTWU would be the signatory to any subsequent contract. The investigation further disclosed that the relationship between the two Unions was explained to the employees by Richardson, another Local 25 representative and members of the employee organizing committee at various times throughout the campaign."

The Union's offices were in New York. Local 25 was thus the Union's agent for handling Magic Pan's employees' problems locally; it was not a substitute. We agree with the Regional Director's statement that Magic Pan presented no evidence that the Union intended to cede its certification to Local 25 or to abandon its bargaining rights. A union may designate agents, including members of other unions, to rep-

resent it in dealings with an employer. *General Electric Co. v. NLRB*, 412 F.2d 512 (2d Cir. 1969); *Minnesota Mining & Mfg. Co. v. NLRB*, 415 F.2d 174 (8th Cir. 1969); *Standard Oil Co. v. NLRB*, 322 F.2d 40 (6th Cir. 1963).

Magic Pan's petition for review is denied. The Board's decision and order (244 NLRB No. 97) is enforced.

PETITION DENIED AND ORDER EN-FORCED.