**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FOODLAND, INC., d/b/a Super-H Discount, Respondent.**

**No. 82–2580.**

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1984.

William Wachter, Washington, D.C. (Andrew F. Tranovich and Daniel R. Pollitt, Attys.; William A. Lubbers, Gen. Counsel; John E. Higgins, Jr., Deputy Gen. Counsel; Robert E. Allen, Associate Gen. Counsel; and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., with him on the brief), for petitioner.

David E. Strecker, Tulsa, Okl. (James L. Kincaid and Katie J. Colopy, Tulsa, Okl., of counsel: Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., with him on the brief), for respondent.

Before McKAY, BREITENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order finding that Foodland, Inc., doing business as Super-H Discount, violated Section 8(a)(5) and (1) of the National Labor Relations Act and requiring Foodland to bargain with two unions representing employees at Foodland's retail grocery store in Owasso, Oklahoma.[1] Foodland admittedly refused to bargain with either of the two unions, and would justify its refusal on two alternative grounds: 1) the two bargaining units designated by the Board were inappropriate; and 2) the Board erred in not holding a hearing in connection with Foodland's charge of impermissible electioneering by union officials. We are not persuaded, and therefore enforce.

Foodland operates six retail grocery stores in northeast Oklahoma, one of which

---

1. The Board's decision appears as Foodland, Inc., 261 N.L.R.B. 995 (1982).

is located in Owasso, Oklahoma. The United Food and Commercial Workers Retail Clerks Union Local 73R filed a representation petition with the Board seeking certification as the bargaining representative of all employees at the company's Owasso store except meat department employees. At about the same time, United Food and Commercial Workers, Meatcutters Local No. 644 filed a representation petition with the Board seeking certification as the bargaining representative of the meat department employees in Foodland's Owasso store. The Regional Director held a consolidated hearing on these two petitions. Foodland's basic position before the Regional Director was that the only appropriate bargaining unit was *all* of its employees at *all* six of its stores, and that, in any event, a bargaining unit consisting of only meat department employees at its Owasso store was inappropriate. The Regional Director, however, found that the single store employees and the meat department employees within the single store constituted appropriate bargaining units. The Board thereafter denied Foodland's request for review of the Director's bargaining unit determinations.

Two elections were then held with the Union winning both. Thereafter, Foodland filed an election objection to both elections, claiming that the Union had engaged in impermissible electioneering in the vicinity of the polls near the time of the elections. Following an administrative investigation, the Regional Director overruled Foodland's election objection, concluding that no evidentiary hearing was necessary. The Board denied Foodland's request that the Director's order on this particular matter be reviewed. The two unions were thereafter duly certified as the exclusive bargaining unit for the two groups of employees in Foodland's Owasso store.

As indicated, the unions requested Foodland to bargain, and the latter refused. As a result of Foodland's refusal to bargain, the unions filed unfair labor practice charges against the company. At the hearing before the Administrative Law Judge on the unfair labor practice charges, the judge concluded that the matters sought to be raised by Foodland were litigated in prior proceedings, that Foodland did not offer to adduce any newly discovered or previously unavailable evidence, and that Foodland had violated Section 8(a)(5) and (1) of the Act by refusing to bargain. The Board affirmed the rulings, findings and conclusions of the judge and adopted his recommended order. The Board now seeks enforcement of its order.

■ As stated, Foodland has admittedly refused to bargain with either union, and initially seeks to justify its refusal on the ground that the bargaining units certified by the Board were improper. We disagree. We have frequently held that the Board's determination of an appropriate bargaining unit will not be set aside unless it is arbitrary or capricious. *E.g., Beth Israel Hospital v. N.L.R.B.,* 688 F.2d 697, 699 (10th Cir.) (en banc), *cert. dismissed,* 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *N.L.R.B. v. Pan American Petroleum Corp.,* 444 F.2d 328, 330 (10th Cir.), *cert. denied sub nom. Amoco Production Co. v. N.L.R.B.,* 404 U.S. 941, 92 S.Ct. 287, 30 L.Ed.2d 255 (1971); *N.L.R.B. v. Gold Spot Dairy, Inc.,* 432 F.2d 125, 127 (10th Cir. 1970). It is also settled law that where, in a given case, there may be more than one appropriate bargaining unit, the question on review is whether the Board designated an appropriate unit, even if the employer shows another unit might be *more* appropriate. *Beth Israel Hospital,* 688 F.2d at 699–700; *Daylight Grocery, Inc. v. N.L.R.B.,* 678 F.2d 905, 908 (11th Cir.1982). In determining the appropriateness of a bargaining unit in a multistore retail operation, the Board has adopted a policy stating that a single store is presumptively an appropriate unit for bargaining. *Haag Drug Co., Inc.,* 169 N.L.R.B. 877 (1968). Courts have held the Board is entitled to make this presumption based on its past experience. *Friendly Ice Cream Corp. v. N.L.R.B.,* 705 F.2d 570, 576 (1st Cir.1983); *Beth Israel Hospital,* 688 F.2d 697, 700 (10th Cir.) (en banc), *cert. dismissed,* 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *N.L.R.B.*

v. *J.W. Mays, Inc.*, 675 F.2d 442, 444 (2d Cir.1982); *Alaska State Bank v. N.L.R.B.*, 653 F.2d 1285, 1287 (9th Cir.1981); *Magic Pan, Inc. v. N.L.R.B.*, 627 F.2d 105, 107 (7th Cir.1980).

■ Applying these accepted legal principles, the Regional Director, after a hearing, held that the employees at the Owasso store, excluding meat department employees, constituted an appropriate collective bargaining unit. In reaching this conclusion, the Regional Director not only relied on the single-store presumption, but also noted that the Owasso store manager, though a part of a chain operation, had significant supervisory authority, that there was a limited amount of employee interchange between Foodland's five other outlets, that there was an absence of any bargaining history of Foodland's employees in a larger, more comprehensive unit, and that no union sought to represent Foodland's employees on a broader basis. Such determination by the Regional Director was not arbitrary or capricious, and is, in our view, supported by substantial evidence on the record. We are not inclined to disturb it.

■ Foodland's next position is that assuming the employees of its Owasso store constituted an appropriate unit, it was error to carve out the meat department employees in that store and designate them as a second appropriate bargaining unit. We disagree. It has been consistently held that where there is a separate and distinct meat market in a multi-department retail grocery store, the Board is justified in determining that a bargaining unit consisting only of meat department employees is an appropriate one. *Big Y Foods, Inc. v. N.L.R.B.*, 651 F.2d 40, 45 (1st Cir.1981); *N.L.R.B. v. Gerbes Super Markets, Inc.*, 436 F.2d 19, 22 (8th Cir.1971). The Board has long recognized that there are many differences between meat department employees and the other employees in a retail grocery store with respect to wages, training, skills and supervision.[2]

■ Of course, each case must stand on its own two feet, and in the instant case the Regional Director, after hearing, determined that the employees in the meat department at the Owasso store constituted an appropriate unit. The Director found that the meat department in Foodland's Owasso store was autonomous and distinct within the Owasso store. The meat store manager sets the prices of the meat and the meat department sales totals are kept separate from grocery store totals. The meat department is composed of seven employees and a meat department manager, and of these seven, four are wrappers, two are meat cutters, and one does clean-up. The other 45 non-meat department employees at the Owasso store, do not perform the specialized meat cutting and meat wrapping functions of the meat department employees, and there is little interchange between them. For their specialized training, the meat department employees are initially paid a higher wage rate and have a different wage scale from other employees. Finally, the Director found the meat store manager had supervisory authority over the meat department employees. All in all, we cannot say that this particular determination by the Regional Director was arbi-

---

2. Foodland argues that the meat department employees in the Owasso store do not exercise the special butchery skills which have traditionally differentiated meat market employees from grocery employees in prior NLRB decisions. As support for this stance, the Company points out that the meat department operates on a "boxed beef" system, whereby the meat arrives at the store packaged in "primal cuts." The meat department employees then cut and process the meat from this "boxed" stage rather than from the more traditional "carcass" stage. *Relying on Great Day, Inc.*, 248 N.L.R.B. 527 (1980), the Company contends that because specialized skills are no longer required, the Board should have included the meat department employees in the same bargaining unit as the other employees. We do not agree. The evidence shows that the meat department employees must still spend most of their time cutting, processing and wrapping the meat—functions which require special skills. We agree with the Board that this fact distinguishes *Great Day* where the meat department employees in that case spent seventy-five percent of their time unloading trucks, unpacking cases of meat products, stocking display cases, etc.

trary or capricious. On the contrary, the record supports the Director's determination.

■ With respect to Foodland's charge of impermissible election practices by the unions, the Regional Director, after an administrative investigation, rejected the charge and determined that no adversarial evidentiary hearing was required. We agree. A party objecting to a Board-conducted election is entitled to a hearing on its election objections "only if it 'shows by *prima facie* evidence the existence of substantial and material factual disputes which, if resolved in its favor, would require the setting aside of the election.'" *Crown Cork & Seal Co., Inc. v. N.L.R.B.*, 659 F.2d 127, 129 (10th Cir.1981), *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982) (quoting *N.L.R.B. v. Whitney Museum of American Art*, 636 F.2d 19, 23 (2d Cir.1980)). Foodland's objections to the two elections are, in our view, rather thin, and, even assuming them to be true, do not warrant the setting aside of the election. The use of campaign buttons, stickers, or other similar insignia is not prohibited conduct. *Vegas Village Shopping Corp.*, 229 N.L.R.B. 279, 291 (1977), *enf'd.*, 599 F.2d 1057 (9th Cir.1979). Foodland suggests that the donning of buttons saying "Vote Yes" fifteen minutes before the time for the election, apparently by prearrangement, was improper and vitiated the entire election process. We do not agree. *See McKibbon Brothers, Inc., d/b/a Mar-Jack Poultry Company*, 123 N.L.R.B. 1571 (1959) (objection that employees donned handmade paper hats saying "Vote No" thirty minutes before election held without merit). The results of union elections are not to be lightly set aside. *See, e.g., Worley Mills, Inc. v. N.L.R.B.*, 685 F.2d 362 (10th Cir.1982); *N.L.R.B. v. Slagle Manufacturing Co.*, 658 F.2d 785 (10th Cir.1981). In the instant case, Foodland's charges of impermissible electioneering are *de minimis;* an inference cannot be drawn that the conduct interfered with the employees' exercise of free choice.

■ Foodland's final argument is that it was denied procedural due process when the Administrative Law Judge at the hearing on the union charges of unfair labor practices refused to relitigate the Board's earlier designation of bargaining units and the Board's rejection of Foodland's charge of improper union electioneering. In the absence of newly discovered or previously unavailable evidence, the NLRB need not reconsider at the unfair labor practice proceeding any issue previously adjudicated at the representation proceedings. *Magnesium Casting Co. v. N.L.R.B.*, 401 U.S. 137, 141–42, 91 S.Ct. 599, 601–02, 27 L.Ed.2d 735 (1971); *Beth Israel Hospital v. N.L.R.B.*, 688 F.2d 697, 700 (10th Cir.) (en banc), *cert. dismissed*, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982); *N.L.R.B. v. Gold Spot Dairy, Inc.*, 432 F.2d 125, 127 (10th Cir.1970). At the hearing before the Administrative Law Judge, Foodland's proffer of new and different evidence, was, in our view, neither.

Order enforced.