745 F.2d 1059
 117 L.R.R.M. (BNA) 2518, 101 Lab.Cas. P 11,203
 L.C. CASSIDY & SON, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Chauffeurs, Teamsters, Warehousemen and Helpers Local Union
No. 135, Intervening Party-Respondent.
 No. 83-2622.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 8, 1984.
Decided Sept. 27, 1984.
As Corrected Nov. 2, 1984.
 
 D. Reed Scism, Roberts, Ryder, Rogers & Scism, Indianapolis, Ind., for petitioner.
 Barbara J. Baird, Fillenwarth, Dennerline & Groth, Indianapolis, Ind., for respondent.
 Charles Donnelly, N.L.R.B., Washington, D.C., for intervening party-respondent.
 Before WOOD and ESCHBACH, Circuit Judges, and KELLAM, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 L.C. Cassidy & Son, Inc. ("Cassidy") filed this petition for review of an order of the National Labor Relations Board ("Board") which found Cassidy in violation of section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) and (5), and directed it to bargain with the Chauffeurs, Teamsters, Warehousemen and Helpers Local Union 135 ("Union"). The Board cross-petitions for enforcement of its order. Because we find Cassidy's objections to the order to be without merit, we grant enforcement.
 
 I.
 
 2
 On July 29, 1982, the Union filed a Representation Petition seeking to represent Cassidy's installers, helpers, and drivers. The parties entered into a Stipulation for Certification upon Consent Election agreement, and the election was held September 3, 1982. The Union received 11 votes, 6 votes were cast against the Union, and 2 votes were challenged. Cassidy filed timely objections to the election, charging that the Union poll observer spoke to employees during three absences from the polling area, that the observer wore his official observer's badge during those absences, and that the Board agent closed the polls early. The Regional Director conducted an investigation, during which Cassidy was given the opportunity to present evidence in support of its objections.[1] One or more Board agents also obtained affidavits from a number of witnesses.
 
 
 3
 On October 13, 1982, the Regional Director issued his report recommending that the Board overrule the objections. The Director found that the Union observer had left the polling place three times with permission of the Board agent, once to sharpen a pencil and twice to use the restroom. The employer's observer testified that none of these absences lasted longer than three minutes. On one occasion, the Union observer asked another employee, who had been ill, how he was feeling. On another, he agreed to get a soft drink for another employee from a machine located in the polling place. The Regional Director found no evidence that the observer engaged in any electioneering during his absences. While it was undisputed that the observer wore his observer's badge during these absences, the Regional Director found that in the absence of any evidence of electioneering, the fact that the badge was worn outside the polling place was of no significance.
 
 
 4
 Cassidy had also charged that the Board agent closed the poll early. It was undisputed that at 4:45 p.m., the agent sealed the ballot box, asked both observers to initial it, and went to the restroom. The employer's observer accompanied her to show her where the restroom was located. They were gone approximately 10 minutes, during which time the Union's observer remained at the polling place. At the time the agent left, only one employee had not yet voted, and that employee had not been scheduled to work on the election day. The Union observer testified that the employee did not come to vote during the time that the agent was in the restroom, and the poll reopened when the agent returned and closed at 5:00 p.m. The Regional Director found that there was no evidence that the agent's absence affected the outcome of the election, even assuming that one employee had been excluded from voting.
 
 
 5
 Cassidy filed exceptions to the Regional Director's report, and on February 3, 1983, the Board issued a Decision and Certification of Representative, adopting the Regional Director's report and certifying the Union as the collective bargaining representative for Cassidy's employees in the bargaining unit. Cassidy thereafter refused the Union's request to bargain, admittedly for the purpose of seeking judicial review of the election determination. The Union filed an unfair labor practice charge and the Board's General Counsel issued a complaint. Subsequently, the Board granted summary judgment for the General Counsel.
 
 II.
 
 6
 In its petition for review, Cassidy renews its obligations to the Board's certification of the Union. We review the Board's orders to determine whether the Board's application of its election rules in this case is supported by substantial evidence. Mosey Manufacturing Co. v. NLRB, 701 F.2d 610, 614 (7th Cir.1983) (en banc ).
 
 A. Observer Contact With Employees
 
 7
 Cassidy contends that, under Michem, Inc., 170 N.L.R.B. 362 (1968), the Union observer's comments to employees are a per se ground for overturning the election, without regard to the content or duration of the conversations. We disagree.
 
 
 8
 In Michem, the Board stated that "prolonged conversations" between parties to an election and voters waiting to vote "will normally ... be deemed prejudicial." Id. at 363. However, the Board also noted that the rule does not mean that "any chance, isolated, innocuous comment or inquiry by an employer or union official to a voter will necessarily void the election." Id.
 
 
 9
 The evidence in this case amply supports the Regional Director's conclusion that the observer's comments to employees could not have prejudiced the election results. Only two contacts between the observer and employees appear in the record. In the first, the observer asked an employee who had been ill how he was feeling. The employee's vote was later challenged and was not counted. In the second encounter, the employee asked the observer, who was returning to the polls from the restroom, to get him a soft drink from the machine located in the polling area since employees were not allowed to enter that area except to vote. The observer did so. Neither of these encounters occurred in the polling area, and there is no evidence of electioneering. See NLRB v. Newton-New Haven Co., 506 F.2d 1035, 1037 (2d Cir.1974) ("[T]he rationale of Michem is to eliminate the last-minute advantage given a party who intrudes upon the privacy of the employee while he is in the polling place or standing on line to vote."). Cf. Midwest Stock Exchange v. NLRB, 620 F.2d 629 (7th Cir.) (Michem violated where observer engaged in repeated conversations with voters standing in line to vote, one of which lasted five minutes), cert. denied, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980).
 
 
 10
 The circumstances of this case show no more than the "chance, isolated, innocuous comment[s]" which the Board indicated in Michem are insufficient without more to invalidate an election.
 
 B. Observer's Badge
 
 11
 It is undisputed that the Union observer did not remove his observer badge during his brief absences from the polling place. Cassidy argues that such conduct is in violation of the NLRB's Casehandling Manual, and gave the Union an unfair advantage in the election by raising the observer's status to "that of an official of the United States Government, thus granting him and the Union added stature and credibility." Appellant's Brief at 10.
 
 
 12
 Cassidy does not suggest how some employees might have been led to believe that the observer, a fellow employee, was given the imprimatur of the federal government because he was wearing an observer badge. This is especially so in light of the fact that the employer's observer also wore such a badge, as the employees could readily note when they entered the polling place to vote. Cassidy primarily relies on the fact that the Board's Case-handling Manual states:
 
 
 13
 Observers are not to be permitted to wear observer badges when they are not acting as observers.
 
 
 14
 The Manual also recognizes that there may be departures from the procedures outlined therein in varying circumstances. Cassidy introduced no evidence supporting its allegation that employees were misled by this deviation from the Manual. The Regional Director's conclusion that no prejudice resulted is supported by substantial evidence.
 
 C. Closing of Polling Place
 
 15
 The evidence shows that the poll was closed for approximately 10 minutes. Relying on Kerona Plastics Extrusion Co., 196 N.L.R.B. 1120 (1972), Cassidy contends that this incident was grounds for overturning the election regardless of whether any voters were excluded.
 
 
 16
 In Kerona Plastics, the polls were closed twenty minutes early during the morning session of a split-session election. The agent closed the polls in the presence of employees waiting to vote, and the Board held that the early closing, coupled with the employees' knowledge of the closing, mandated that the election be set aside, stating that it was "impossible ... to determine whether the ... irregularity affected the outcome of the election." Id.
 
 
 17
 Cassidy concedes that there is no evidence in this case that any voter was excluded, or that any voter knew that the poll had been closed for a period before 5:00 p.m.[2] Nor does it dispute the fact that all eligible voters but one had voted before the absence. Nevertheless, it argues that the agent's absence from the polling place "impugned the integrity of the election process," Appellant's Brief at 13, and thus the election must be set aside. However, we agree with the Regional Director that Cassidy has not shown that the election's outcome was affected by the agent's brief absence:
 
 
 18
 If an election is to be set aside because of a deviation from the scheduled voting times, it must be affirmatively shown that eligible voters, in sufficient numbers to affect the result of the election, were disenfranchised as a result of the change.
 
 
 19
 NLRB v. McFarland Co., 572 F.2d 256, 260 (9th Cir.), cert. denied, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978); accord, NLRB v. Fenway Cambridge Motor Hotel, 601 F.2d 33, 38 (1st Cir.1979); NLRB v. Smith, 438 F.2d 17, 20 (5th Cir.1971). Because Cassidy has not even attempted to make a showing that the election outcome was affected by the agent's absence, and there is no evidence that it was, we find that the Regional Director's conclusion that no prejudice resulted is supported by substantial evidence.[3]
 
 III.
 
 20
 Cassidy further argues that the Regional Director erred by not holding a hearing to resolve alleged factual disputes, and that the Board erred in adopting the Regional Director's report without reviewing the evidence before the Director.
 
 A. Necessity for a Hearing
 
 21
 Cassidy argues that the Regional Director should have ordered a hearing because there was conflicting evidence concerning the Union's observer's contact with the two employees.
 
 
 22
 A party challenging a representation election is entitled to an evidentiary hearing only when it raises substantial and material factual issues and proffers evidence that establishes a prima facie case for setting aside an election. NLRB v. Howard Johnson Motor Lodge, 705 F.2d 932, 934 (7th Cir.1983); Advertisers Manufacturing Co. v. NLRB, 677 F.2d 544, 546 (7th Cir.1982); cf. Board Rules and Regulations, 29 C.F.R. Sec. 102.69(d) (1984).
 
 
 23
 As our discussion of Cassidy's objections to the election indicates, we do not believe that it ever established a prima facie case that the election should be overturned. Nor did Cassidy, in its exceptions to the Regional Director's report, object to the Director's findings of fact, as distinguished from his legal conclusions. See Magic Pan, Inc. v. NLRB, 627 F.2d 105, 109 (7th Cir.1980); Louis-Allis Co. v. NLRB, 463 F.2d 512, 520 (7th Cir.1972).
 
 
 24
 Moreover, the factual disputes raised by Cassidy in this court clearly show that no "substantial and material" dispute exists. Cassidy claims there is a dispute about whether the observer actually spoke to the first employee; however, the Regional Director assumed that he had spoken to the employee in making his findings. Cassidy also argues that the extent of the observer's contact with the second employee is unclear. The only inconsistency in the record concerning the second employee was whether the employee, or someone else, asked the observer to get the soft drink. Since the observer's conduct could only have been objectionable if he in fact talked to the employee,[4] the Regional Director assumed that he had done so in making his findings. Thus, all conflicts in the evidence were resolved in favor of the employer's position. Cassidy was not entitled to a hearing.B. Board's Review of the Evidence
 
 
 25
 Cassidy argues that because the Regional Director did not forward the affidavits upon which he relied to the Board, the Board abused its discretion in adopting the Director's report. In urging that we deny enforcement on this ground, Cassidy relies on our decision in NLRB v. Allis-Chalmers, 680 F.2d 1166 (7th Cir.1982), in which we denied enforcement of an NLRB order founded on a Regional Director's ex parte investigation where the Board had not seen the evidence relied on by the Director. Under the Board's former regulations in effect at the time we decided Allis-Chalmers, if the Regional Director determined that no hearing was necessary, he was not required to transmit any of the evidentiary material he considered in reaching his conclusions. Since Allis-Chalmers, and in response to similar decisions by the courts of appeals, the Board has amended its regulations by clarifying the contents of the record and the duties of the parties in no-hearing cases. See 29 C.F.R. Sec. 102.69. The parties in this case are governed by the amended regulations. Section 102.69(g)(1)(ii) now provides for the inclusion in the record in no-hearing cases of documents relied on by the Regional Director, other than witnesses' statements. Witness statements still are excluded from the record materials considered by the Board unless supplied by the parties under Sec. 102.69(g)(3). If an objecting party wishes the Board to review affidavits and other materials it has submitted, it may do so by appending them to its objections. By this method, the parties may supplement the record before the Board with any and all materials previously submitted to the Director. As the Board explained in Summa Corp., 265 N.L.R.B. 343 (1982), aff'd mem. sub nom. NLRB v. Summa Corp., 734 F.2d 21 (9th Cir.1984):
 
 
 26
 The burden is on the objecting party to demonstrate to the Board that the evidence it submitted to the regional director, if credited, would warrant setting aside the election, and that the regional director in the decision overruling the objections resolved substantial and material issues of fact without conducting a hearing. In the absence of such a demonstration we are entitled to rely on the regional director's report or decision, for the material facts in such circumstances are undisputed .... Thus, a regional director's determination that a hearing is unnecessary is a finding that there are no substantial and material issues presented, and our adoption or rejection of this determination rests solely on whether the objecting party has identified evidence to the contrary.
 
 
 27
 Id. at 343-44 (citations omitted). As the Fourth Circuit has recognized, the Board's new regulations put the parties on notice that the affidavits received in the Regional Director's administrative investigation are not part of the record, and that it is the responsibility of the objecting party to file supporting affidavits with the Board. National Posters, Inc. v. NLRB, 720 F.2d 1358 (4th Cir.1983).[5]
 
 
 28
 Cassidy did not avail itself of the Board's procedures for supplementing the record. Its objections to the Regional Director's report, moreover, do not contest any of the factual findings of the Director, nor did Cassidy at that time make any claim that the Director erred in not holding a hearing to resolve disputed factual issues. It merely contested the Regional Director's application of Board precedent to the facts found. To require the Board to review the affidavits collected by the Regional Director in a case such as this would force the Board "to assume the objecting party's burden and conduct a 'fishing expedition' into the investigatory file for evidence which the objecting party has failed to identify." Summa Corp., supra, at 344. See NLRB v. Michigan Rubber Products, 738 F.2d 111 (6th Cir.1984) (no prejudice from failure to forward record to Board where employer's objections even if true present insufficient grounds for setting aside election). Accordingly, we hold that the Board did not err in adopting the Regional Director's report without reviewing the affidavits.
 
 IV.
 
 29
 For the reasons expressed above, the petition for review is denied and the Board's cross-petition for enforcement is granted.
 
 
 30
 It is so ordered.
 
 
 
 *
 The Honorable Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Cassidy chose to rely on the investigation of the Regional Director and did not submit affidavits of its own
 
 
 [2]
 The employer's observer testified that all of those who voted had done so by shortly after 4:00 p.m
 
 
 [3]
 Because we affirm the Board's finding that none of the incidents cited by Cassidy could possibly have prejudiced the election results, we need not consider Cassidy's claim that the cumulative impact of the incidents warrants overturning the election
 
 
 [4]
 There was testimony that Cassidy's Trucking Manager, a supervisory employee, requested the soft drink. Because supervisory employees are not considered employees for purposes of an election, contact between an observer and such an employee would not have been objectionable
 
 
 [5]
 Because the new regulations clearly define the record and the duties of the parties, Cassidy's claim that they violate due process in some manner cannot be sustained