**SULLIVAN ELECTRIC COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–2104.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1973.

Decided June 19, 1973.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, Tenn., on brief, for petitioner.

Steven C. Kahn, N.L.R.B., Washington, D. C., for respondent; Elliott Moore, Deputy Asst. Gen. Counsel, Washington, D. C., on brief.

Before EDWARDS and MILLER, Circuit Judges, and LAMBROS,* District Judge.

## PER CURIAM.

Petitioner, Sullivan Electric Company, seeks review and setting aside of an order of the National Labor Relations Board requiring it to recognize and bargain with a union [1] and to reinstate 13 employees. The Board in turn petitions for enforcement of its order (199 N.L. R.B. 97 (1972)).

Petitioner, Sullivan, is an electrical contractor based in Nashville, Tennessee. The instant dispute concerns Sullivan's operation on a construction project in Madisonville, Kentucky, where it was employing a 17-man crew, largely hired from the vicinity and under supervision of a superintendent.

On October 8, 1970, a union representative for the International Brotherhood of Electrical Workers contacted petitioner's superintendent, told him he had signed up a majority of the Madisonville employees, and demanded recognition and bargaining. On being told by the superintendent that he had no authority to deal with such matters and

that he would have to talk to the company officials in Nashville, the IBEW representative left and indicated that there would be a strike the following day unless they heard from the company. Later that afternoon the superintendent distributed pay checks to the employees and (as found by the Hearing Examiner and the Board subsequently from substantial evidence) asked ten or eleven of the seventeen employees whether they had signed up, in each instance receiving an affirmative answer.

The following day the union did call a strike and thirteen of the employees failed to report for work. The company replaced them with other company employees sent in from outstate. On October 27, when an unconditional offer to return to work was made, the company informed the men that they had been permanently replaced.

On these facts the Board found that the company had voluntarily conducted a poll of its employees and thus ascertained that in fact a majority of them had joined the union. On that basis the Board found that the company had violated the Act in refusing to bargain and that therefore the strike had been an unfair labor practice strike and the company was required to reinstate the thirteen employees with back pay. The Board found the company's refusal to reinstate to constitute violations of sections 8(a)(1) and 8(a)(3) of the Act. (29 U.S.C. § 158(a)(1) and (3) (1972)).

■ There is substantial evidence to support the Board's finding that the employer's own poll disclosed a clear union majority. If the facts warranted the Board's finding of a duty to bargain, clearly there was substantial evidence on the whole record to support the Board's findings of 8(a)(1), 8(a)(3) and 8(a)(5) violations.

Although the petitioner had briefed this case as if it were a substantial evidence case, at oral argument petitioner's

---

* Honorable Thomas D. Lambros, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Local 1701, International Brotherhood of Electrical Workers, AFL-CIO.

counsel contended principally that the Board's finding of a duty to bargain and violation of 8(a)(5) was inconsistent with the Board's own cases, including Green Briar Nursing Home, Inc., et al., 201 N.L.R.B. 73 (1973); R & M Electric Supply Co., 200 N.L.R.B. 59 (1972), and Linden Lumber Division, Summer & Co., 190 N.L.R.B. 116 (1971). In these cases the Board was engaged in interpreting the effect of the Supreme Court's decision in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). There the Supreme Court recognized the discretionary right of the Board to enter a remedial bargaining order based on employee choice of a union as expressed through representation cards where employer unfair labor practices had been such as to damage the possibility of a fair NLRB election.

> In fashioning a remedy in the exercise of its discretion, then, the Board can properly take into consideration the extensiveness of an employer's unfair practices in terms of their past effect on election conditions and the likelihood of their recurrence in the future. If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue. NLRB v. Gissel Packing Co., *supra* at 614–615, 89 S.Ct. at 1940. (Footnote omitted.)

In *Gissel* the Supreme Court also said, with apparent approval:

> The Board pointed out, however, (1) that an employer could not refuse to bargain if he *knew*, through a personal poll for instance, that a majority of his employees supported the union, . . . . *Id.* at 594, 89 S.Ct. at 1930.

In the instant case the Board held that petitioner had discovered by means of its poll that the union had a majority, and that it could not thereafter disclaim the result. Green Briar Nursing Home,

Inc., 201 N.L.R.B. 73 (1973); Soil Mechanics Corp., 200 N.L.R.B. 60 (1972); Sullivan Electric Co., 199 N.L.R.B. 97 (1972); Nationwide Plastics Co., Inc., 197 N.L.R.B. 136 (1972).

In *Green Briar Nursing Home* (a case relied upon by petitioner) the Board provided its own rationale for reconciling its post-*Gissel* cases:

> In *Linden Lumber* and our later decision in *Sullivan Electric Company*, [1972 CCH NLRB ¶ 24,699] 199 NLRB No. 97, we made it clear that an employer will not be found in violation of Section 8(a)(5) of the Act solely upon the basis of his refusal to accept union-proffered evidence of majority status other than the results of a Board election, *unless his conduct precluded resort to an election In those cases we pointed out that an election would be precluded by substantial employer misconduct in violation of the Act, by an employer's action in agreeing upon another method of ascertaining whether a union majority existed, or by an employer's conduct of a poll of employees which established the existence of a majority*. None of these factors, nor any others precluding a resort to an election, exists here; as noted *infra,* the Employer's misconduct was not found to be of a character which would prevent the running of a fair election. We therefore find that the Respondent did not violate Section 8(a)(5) of the Act by refusing to bargain with the union despite the union's asserted card majority. Green Briar Nursing Home, Inc., 201 N.L.R.B. 73 (1973). (Footnote omitted.) (Emphasis added.)

■ We believe the Board's reasoning in establishing the above-described exceptions to the general policy of determining bargaining representation by a Board election is consistent with the leading case law established in NLRB v. Gissel, *supra.*

Enforcement of the Board's order is granted.