CRANE SHEET METAL, INC. and Hartley Sheet Metal Company, Incorporated, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1344.

United States Court of Appeals, Tenth Circuit.

April 12, 1982.

Stephen P. Dees, Kansas City, Mo. (Alvin D. Shapiro, Kansas City, Mo., with him on

the brief) of Stinson, Mag & Fizzell, Kansas City, Mo., for petitioners.

Joseph A. Schwachter, N. L. R. B., Washington, D. C. (John G. Elligers and W. Christian Schumann, Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for respondent.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

This case arises upon cross-petitions for review and enforcement of a decision and order of the National Labor Relations Board (the Board) which reversed the recommended order of an administrative law judge and held that Crane Sheet Metal, Inc. (Crane) and Hartley Sheet Metal Company, Inc. (Hartley) had violated sections 8(a)(1) and (5) of the National Labor Relations Act (the Act) [1] by failing and refusing to abide by the provisions of a labor contract. The contract had been negotiated in 1977 for Crane and Hartley with the Sheet Metal Workers International Union (the Union) by the Sheet Metal and Air Conditioning Contractors Association, Inc., Kansas City Chapter (the Association). Crane and Hartley deny that the Association was authorized to negotiate a binding agreement for them. The Board held that the contract was binding upon Crane and Hartley because they had clothed the Association with "apparent authority" to bargain in their behalf with the Union. The Board's order is reported at 248 NLRB No. 15. Record, vol. 3, at 480–91.

We have jurisdiction to review and enforce, modify, or set aside the Board's order under sections 10(e) and (f) of the Act.[2] These sections further provide that, as to questions of fact, the Board's findings are conclusive and binding if supported by substantial evidence on the record considered as a whole. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. First National Bank of Pueblo, 623 F.2d 686, 691 (10th Cir. 1980). While the statute does not expressly limit our scope of review with respect to questions of law, the experienced judgment of the Board is entitled to great weight. Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 681–82 n.1, 64 S.Ct. 830, 831–32 n.1, 88 L.Ed. 1007 (1944).

Crane and Hartley are sheet metal contractors located in southeastern Kansas. For some years prior to 1975, they had regularly bargained with Union Local 475 as part of an informal group of southeastern Kansas contractors. However, each contractor retained final authority to approve for itself any contract negotiated. The resulting contract was a single document signed by each contractor individually.

In the spring of 1975, Local 475 merged into Local 2, the Kansas City area local, and Crane and Hartley were notified that they would be required to negotiate with Local 2 in the future. A Union official introduced them to an official of the Association, which at that time represented sheet metal contractors in the Kansas City area, but which wished to extend its coverage to include southeastern Kansas contractors so that it would remain generally coextensive with that of Local 2. When Crane and Hartley expressed concern that a Kansas City area employer association might not adequately protect the interests of southeastern Kansas contractors, the Union official assured them that there would continue to be separate negotiations and contracts for the southeastern area, just as there always had been.[3] Based on this assurance from the Union, Crane and Hartley consented to let

1. 29 U.S.C. §§ 158(a)(1) and (5).

2. 29 U.S.C. §§ 160(e) and (f).

3. The interests of southeastern contractors conflicted with those of Kansas City contrac-tors. Traditionally the two areas have differed greatly with respect to wage scales and employee benefits, and Crane and Hartley feared that Association representation would narrow the differences.

the Association represent them in negotiations for the 1975 renewal of their collective bargaining agreement, on the condition that each contractor retained final authority to approve for itself the negotiated contract. The Union knew of this condition and consented to it. Moreover, it was entirely consistent with past practice.[4]

The Association subsequently negotiated the 1975 contract, and it was approved by Crane and Hartley on the strength of an oral report from an Association official. Sometime later in 1975, Crane and Hartley each paid a $250 Association membership fee. Crane and Hartley did not receive a copy of the 1975 contract until sometime in 1976, and, upon receipt, they discovered in it items to which they had not agreed. These included an increase in industry fund payments, which Crane and Hartley refused to pay. Nevertheless, neither Crane nor Hartley disavowed the contract or withdrew from the Association. Their failure to withdraw from the Association was perhaps attributable to the fact that the Association had not provided them with a copy of its bylaws which, contrary to their understanding, authorized the Association to negotiate and execute labor contracts binding on its employer members without their approval.[5]

In early 1977, Hartley notified the Union that it intended to operate an open shop upon expiration of the current contract later that year. In reply, the Union sent Crane and Hartley a letter stating that it wished to open negotiations for the 1977 contract. Hartley wrote back to the Union that it required one week's notice of any proposed negotiating meetings. However, without further notice to Crane or Hartley, negotiations were begun. While these negotiations were in progress, an Association official asked Crane and Hartley whether they wished the Association to represent them in negotiating the 1977 contract. He apparently had some doubt as to his authority. Crane and Hartley consented to representation by the Association based on assurances that, even though the 1977 contract would be one document covering both the Kansas City and the southeastern areas, the two areas would be treated separately in the contract and, in any event, each contractor would retain final authority to approve the contract for itself. No Union official was present at this meeting and apparently the Union was never informed of the limitation placed by Crane and Hartley on the Association's authority. The Association informed the Union that it had authority to bargain for Crane and Hartley.[6] Subsequently, the 1977 contract was negotiated and ratified. Crane and Hartley were not notified of the ratification meeting and did not participate in it. They did not approve the contract, and, in a later meeting with the Union, they were unable to resolve the difficulties they had with it.

On these facts, the Board found that the Union was justified in relying on the Association's "apparent authority," as the agent of Crane and Hartley, to negotiate a binding 1977 contract in their behalf. We cannot agree with the Board's holding. We think the evidence insubstantial to support its conclusion.

Section 2(13) of the Act[7] provides that, in determining whether a multi-employer bargaining unit is acting as the agent of an employer, so as to bind the employer by the bargaining unit's acts, the question of whether the specific acts performed were

---

4. The Board did not decide whether the Association was clothed with actual or apparent authority to negotiate a binding contract in 1975 in behalf of Crane and Hartley. Only the 1977 contract (discussed below) is at issue in this case.

5. Crane and Hartley were not aware of this provision of the Association's bylaws until the 1977 contract had been signed. Until then, they believed that they could not be bound by a labor contract unless it was expressly approved by them.

6. Crane and Hartley were not listed by name on the Association membership roster given to the Union. After listing all of the Kansas City area contractors by name, the Association had added to the roster: "All south area contractors."

7. 29 U.S.C. § 152(13).

actually authorized or subsequently ratified is not controlling. Apparent authority is sufficient to bind the employer. *United Steelworkers v. CCI Corp.*, 395 F.2d 529 (10th Cir. 1968).

█ The Board has formulated a court-approved test to determine whether an employer has delegated to a multi-employer unit apparent authority to negotiate a collective bargaining agreement binding on the employer. The test is whether the employer has indicated from the outset an unequivocal intention to be bound by group action and whether the union has been notified of the existence of the group and the delegation of bargaining authority to it and has assented to and entered upon negotiations with the group's representative. *See, e.g., NLRB v. Beckham, Inc.*, 564 F.2d 190 (5th Cir. 1977); *Komatz Construction, Inc. v. NLRB*, 458 F.2d 317 (8th Cir. 1972); *Western States Regional Council No. 3, International Woodworkers v. NLRB*, 398 F.2d 770 (D.C.Cir.1968).

█ It is clear from the record that the last two elements of this test are satisfied. The Union had been notified that Crane and Hartley had delegated bargaining authority to the Association, and the Union and the Association had entered upon negotiations. However, the evidence does not support a finding that Crane and Hartley at any time evinced an unequivocal intention to be bound by the actions of the Association. The evidence indicates clearly that the only group Crane and Hartley ever considered themselves to be part of was that of the southeastern Kansas contractors. They never empowered the Association to act for them as part of a larger group including Kansas City area contractors, and a condition of their affiliation with the Association was that each contractor retained final authority to approve a negotiated contract. This condition was known and consented to by the Union in 1975, and nothing that Crane and Hartley ever did subsequently was sufficient to justify the Union reasonably to rely upon any "apparent authority" of the Association to negotiate a binding agreement for Crane and Hartley.[8] The fact that Crane and Hartley paid an Association membership fee is not determinative.[9] Each clearly manifested to the Union an intent not to be bound by Association action. The evidence will not support a contrary conclusion. The Union's misapprehension of the Association's authority to bind Crane and Hartley, absent overt conduct on their part manifesting an apparent intent to clothe the Association with a larger authority, is not controlling.

The Board's petition for enforcement is denied; its decision and order in this matter are set aside.

---

8. Indeed, Hartley alerted the Union just prior to the start of negotiations for the 1977 contract of its independent status. Without communicating further with Hartley to resolve the difficulty, the Union entered upon negotiations with the Association.

9. The Board concluded, apparently on the basis of these membership fee payments, that Crane and Hartley became members of the Association and that such membership alone was sufficient to imbue the Association with apparent authority to bind Crane and Hartley. The Association's bylaws expressly granted the Association full authority to bind its members. Without determining whether the payment of membership fees alone is sufficient to establish membership in an employer's association (*see NLRB v. J. D. Industrial Insulation Co.*, 615 F.2d 1289 (10th Cir. 1980)), we conclude that, while association membership raises an inference of association authority to execute an agreement binding on an employer, membership alone is insufficient to establish the necessary unequivocal intention to be bound in the face of evidence clearly to the contrary. *NLRB v. Johnson Sheet Metal, Inc.*, 442 F.2d 1056, 1060 (10th Cir. 1971).