**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**L & B COOLING, INC., Respondent.**

**No. 83–2294.**

United States Court of Appeals, Tenth Circuit.

March 13, 1985.

personal home," but rather "needed to be on exhibit in a gallery." (III R. 62–63).

Judith A. Dowd, Atty. Washington, D.C. (Paul J. Spielberg, Deputy Asst. General Counsel, Washington, D.C., with her on the briefs) for petitioner.

John Edward Price, Cibolo, Tex., for respondent.

Before BARRETT and LOGAN, Circuit Judges, and SAFFELS, District Judge.[*]

BARRETT, Circuit Judge.

The National Labor Relations Board (NLRB or Board) seeks enforcement of its decision and order issued to L & B Cooling, Inc. (L & B), a Colorado corporation wholly owned by Robert Bower and Gary Lofton, finding that L & B committed an unfair

[*] Honorable Dale Saffels, United States District Judge for the District of Kansas, sitting by desig-

nation.

labor act by refusing to bargain with the Fresh Fruit and Vegetable Workers International Union, AFL–CIO, CLC (Union) in violation of Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1).[1] L & B seeks reversal of the Board's order. Jurisdiction vests in this Court pursuant to 29 U.S.C. § 160(e).

The major defense raised by L & B before both the Administrative Law Judge (ALJ) and the Board was that the informal election held among the "regular" seasonal employees at Center, Colorado, was invalid because it did not include *all* of the seasonal employees and, further, because four of the fourteen employees who voted were not eligible because they were supervisors or clericals. The ALJ found for L & B on the first defense but did not render any finding on the second. The Board found contra. A summary of the factual background follows.

L & B commenced operation in the summer of 1979 in the non-retail business of cooling lettuce. Prior thereto, Bower and Lofton worked as forklift operators in the industry. They were then Union members. (R., Vol. I, p. 36.) Mr. David Carlson, one of the regular employees of L & B, testified that he worked as a forklift operator (loader) with Bower and Lofton prior to the summer of 1979 when they organized L & B and commenced operations. He stated that when operations began, Bower and Lofton asked their employees "[n]ot to go union because they couldn't afford to pay the union dues and insurance and other things that go along with the union"; that the employees said "[o]kay, that we'd help them out, and they said maybe next year that maybe we'd be able to go union when we got our finances were a little bit better"; and when the second year came around, "[T]hey asked us to bear with them again ...." (R., Vol. I, p. 27.)

The lettuce-cooling business of L & B involves lettuce which is packaged in the fields and shipped by growers to L & B's vacuum cooler, where the water is removed and the lettuce cooled to near-freezing temperature. The lettuce is then loaded on trucks and shipped throughout the country. All of this occurs in one day's operation. L & B, beginning in 1979 with a "regular" crew of fourteen employees, followed the lettuce crop through Arizona to New Mexico to Colorado. The operation in Colorado involves harvesting lettuce in the San Luis Valley. L & B's head-quarters operation is in Center, Colorado.

During the year 1980, L & B employed a "regular" crew of sixteen employees on a steady basis from July to early October at Center, Colorado. During that year, the volume of lettuce processed was such that L & B hired eleven extra employees on a day-to-day basis as needed. Of this number, five of the extra employees worked one week or less, and the rest worked sporadically. These "extra" employees performed essentially the same work as the "regular" employees, and received like compensation.

L & B again operated in Center, Colorado, commencing July, 1981. There were then seventeen "regular" employees. On July 23, 1981, one Jerry Breshears, executive secretary of the Union, spoke with Robert Bower at a Center, Colorado, restaurant about an election; he told Bower that some of the L & B employees had requested that an election be held. Bower responded "okay" and proceeded with Breshears to the loading dock. Fourteen of the seventeen regular employees gathered there. Both Bower and Lofton were present. Lofton insisted that the vote be taken by secret ballot. Therefore, the employees were given blank slips of paper and advised to write "yes" if they favored the Union and "no" if they did not. The ballots were marked, placed in a hat and counted. The vote was 10 to 4 for the Union. Bower and Lofton did not voice any objection to

---

**1.** (a) It shall be an unfair labor practice for an employer—(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) [29 U.S.C. § 159(a)]; (1) to interfere with, restrain or coerce employees in the exercise of rights guaranteed in section 7 [29 U.S.C. § 157].

the election, either as to the manner in which it was conducted or the result. Thereafter, on August 19, 1981, Breshears wrote to L & B requesting that the company bargain with the Union. L & B refused to do so on the grounds that the Union did not represent its employees in a unit appropriate for bargaining. Significantly, L & B did not employ any "extra" employees in 1981 until the week of August 4, and no "extra" employee worked but slightly more than one full week. L & B hired fourteen "extra" employees at Center, Colorado, in 1981, and only *one* of them had worked for L & B during the 1980 season.

As heretofore related, the ALJ pinpointed L & B's major defense as being that the election was invalid because all of the seasonal employees were not given notice or an opportunity to vote in the election. The ALJ found that the extra seasonal employees had a reasonable expectation of future employment, that L & B was completely dependent on seasonal labor, and that the extra seasonal employees were entitled to inclusion in the unit. The ALJ rejected General Counsel's argument that the employment of the extra employees is sporadic and casual and that therefore they should not be included in the unit. The ALJ dismissed the Regional Director's complaint in its entirety. General Counsel for the Board filed exceptions. The matter was then heard before the three-panel Board on the record, exceptions and briefs.

The Board rejected the ALJ's finding that the extra seasonal employees employed by L & B during the 1980 season should have been included in the unit. The Board found, contrary to the ALJ, that those (seasonal) employees did not have a reasonable expectation of reemployment with L & B. Noting that the seasonal employees of L & B in 1980 had worked throughout the *entire* season in Center, Colorado, the Board observed that such was not the case in 1981. Those hired that year were employed on a sporadic basis; none worked more than slightly over one week; all were part of a labor pool that migrates from the Southwest. The Board found that: the ALJ acknowledged that the

record is devoid of any evidence that L & B gave preference to *former* extra employees; the labor force from which L & B draws its "extra" employees appears to be large, involving itinerants; because the employees are migratory workers traveling throughout the Southwest, it could not infer that they will be in Center, Colorado, each season (the same "extra" employees hired the year before), or, if there, that they will be reemployed. The Board thus rejected the ALJ's finding that the 1980 seasonal employees had a reasonable expectation of reemployment because (a) the labor force from which L & B draws its seasonal employees is indefinable and migratory in nature, (b) the *extent* of L & B's dependence upon seasonal labor varies and is unclear, and (c) L & B's operations are mobile, making the extent of the labor force very amorphous. Thus, the Board concluded that: (a) the record does not support a finding that the 1980 extra seasonal employees should have been included at the time of the election in 1981, and (b) the 1981 election was conducted among all employees entitled to vote, leading to the finding that L & B had violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the Union. The Board further concluded that the unit appropriate for bargaining within the meaning of Section 9(b) consisted of the following job classifications: loader, push-back, set-up man, set-off man, forklift maintenance man, and clerical worker. The Board directed L & B to cease and desist from refusing to bargain collectively with the Union. The Board's order directing posting of notices applied to "[i]ts mobile lettuce cooling facility during the next lettuce growing season in Colorado ...." (R., Vol. III, p. 12.)

I.

L & B contends first that there cannot be an appropriate unit for bargaining in this case because two loaders, both of whom are supervisors, and two clerical employees who voted were not qualified. L & B points to the evidence in the record to support its contention that the two loaders

who voted were supervisors and that the two clerical employees were office clericals. Thus, contends L & B, four of the fourteen employees who voted were not qualified, rendering the election invalid. To be sure, L & B's counsel did present evidence relative to the duties, functions and status of the two loaders and the two clerical employees. In support of L & B's motion to dismiss the complaint following evidence adduced before the ALJ, counsel for L & B argued that the election was invalid and the unit inappropriate because four of the fourteen employees who voted were not eligible and three other "standby" or "second shift" employees entitled to vote had not been notified of the election. (R., Vol. I, pp. 140, 141.) This argument or contention was not addressed by the ALJ. Instead, in dismissing the complaint, the ALJ relied entirely on his finding that the unit was not appropriate for bargaining purposes because the seasonal employees were eligible to vote and that, accordingly, "[i]t has only been established that 10 out of 26 unit employees designated the Union as their bargaining representative." (R., Vol. III, p. 296.)

█ We cannot consider the above contention advanced by L & B because it is not properly before us for review. Section 10(e) of the Act, 29 U.S.C. § 160(e), provides that "[N]o objection that has not been urged before the Board ... shall be considered by the court ... unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Here, although the issue was raised before the ALJ, the ALJ did not rule or rely upon it. The Board's rules provide for the filing of cross-exceptions to the ALJ's decisions, 29 C.F.R. § 102.46(e). Exceptions must be filed to a ruling, finding, conclusion or recommendation under 19 C.F.R. § 102.46(b) in order to be preserved. Furthermore, "[n]o matter not included in exceptions or cross-exceptions may thereafter be argued before the Board, or in any further proceeding." 29 C.F.R. § 102.46(h) (1978). Thus, any contentions advanced before the ALJ which are not preserved for review in exceptions or cross-exceptions are

deemed waived in the absence of extraordinary circumstances. *N.L.R.B. v. Wagner Electric Corporation,* 586 F.2d 1074 (5th Cir.1978); *Barton Brands, Ltd. v. N.L.R.B.,* 529 F.2d 793, 801 (7th Cir.1976), 42 A.L.R.Fed. 54; ("[I]ssues raised before the Administrative Law Judge, but not ruled on in his order, must be presented to the Board in the form of exceptions or cross-exceptions or else the Board will not know of their existence.") *N.L.R.B. v. R.J. Smith Const. Co., Inc.,* 545 F.2d 187, 192 (D.C.Cir.1976) ("Coercion and duress were asserted in the Board's initial proceedings; but when the trial examiner decided the case in favor of the Company on a different ground, the Company filed no cross-exceptions to sustain the trial examiner's result on the ground of coercion and duress. Absent extraordinary circumstances ... the Company's failure to press its claim on the Board in accordance with the Board's regulations, 29 C.F.R. §§ 102.46(b) and (e) and 102.48(a) results in the conclusion that the Company is foreclosed from pressing it on us under § 10(e) of the Act, 29 U.S.C. § 160(e).") Thus the purpose behind this rule is to assure that the Board is fully alerted to the contentions of the parties and aware that they should be addressed and ruled on. *N.L.R.B. v. Cast-A-Stone Products Company,* 479 F.2d 396 (4th Cir. 1973).

█ Furthermore, L & B filed its cross-exceptions out of time. 29 C.F.R. § 102.-46(e) requires that cross-exceptions be filed within ten days of the last day exceptions could have been timely filed. This was not done. Thus, L & B did not preserve the issue of voting eligibility for review by the Board, and, by the same token, the issues cannot be litigated here. L & B has not demonstrated any "extraordinary circumstances" justifying its noncompliance with the rules. We observe that it is not clear from the record that the two loaders were supervisors and that the two clerical employees were office clericals. In any event, L & B did not preserve this challenge for review by the Board or this Court.

## II.

L & B contends that the Board's find-ing/conclusion that the seasonal "extra" employees hired in a prior growing season at Center, Colorado, did not have a reasonable expectation of reemployment and thus were not part of the bargaining unit is not supported by substantial evidence in the record as a whole. We disagree. It is uncontroverted that (a) of the fourteen "extra" or seasonal employees hired by L & B during the year 1981, only *one* of them worked for L & B during the 1980 season, (b) the employment of "extra" employees is sporadic and casual on an "as needed" basis, and (c) L & B did not present evidence that it gave preference to any "extra" seasonal employee who had worked for the company previously.

■ "[A]s to questions of fact, the Board's findings are conclusive and binding if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456] (1951); *N.L.R.B. v. First National Bank of Pueblo*, 623 F.2d 686, 691 (10th Cir.1980)." *Crane Sheet Metal, Inc. v. N.L.R.B.*, 675 F.2d 256, 257 (10th Cir.1982). *See also*, 29 U.S.C. § 160(e); *Interior Alterations, Inc. v. N.L.R.B.*, 738 F.2d 373 (10th Cir.1984). In *Crane, supra*, the NLRB reversed the decision of the ALJ. Our standard of review does not change even though the NLRB disagrees with the findings of the ALJ. *Artra Group, Inc. v. N.L.R.B.*, 730 F.2d 586, 590 (10th Cir.1984). In *Burk Bros. v. N.L.R.B.*, 117 F.2d 686 (3rd Cir.1941), *cert. denied*, 313 U.S. 588, 61 S.Ct. 1110, 85 L.Ed. 1543 (1941), the Court held that the duty of the NLRB to make findings cannot be delegated to an ALJ and if there is substantial evidence in support of the Board's findings which are contrary to those of the ALJ, they cannot be set aside simply because they differ. The NLRB is empowered to draw permissible inferences from credible testimony. *N.L.R.B. v. Dover Corp.*, 535 F.2d 1205 (10th Cir.1976), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976).

■ The issue as to what unit is appropriate for bargaining rests in the sound discretion of the NLRB. 29 U.S.C. § 159(b); *Packard Motor Car Co. v. N.L.R.B.*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *Newspaper Printing Corp. v. N.L.R.B.*, 625 F.2d 956 (10th Cir.1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981).

■ In determining whether the NLRB's exercise of discretion is not unreasonable, arbitrary and unsupported by the evidence, we must carefully review the record as a whole. *N.L.R.B. v. Brown*, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); *Beth Israel Hosp. v. Geriatric Cen. v. N.L.R.B.*, 688 F.2d 697 (10th Cir.1982) (en banc), *cert. dismissed*, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982). We have done so. We hold that the Board's conclusion that the employees hired as "extras" in a prior growing season had no reasonable expectation of reemployment in the bargaining unit at Center, Colorado, is supported by substantial evidence in the record as a whole. This Court has held that where there may be more than one appropriate bargaining unit, the question on review is whether the NLRB designated an appropriate unit, even if the employer shows that another unit might be more appropriate. *N.L.R.B. v. Foodland, Inc.*, 744 F.2d 735 (10th Cir.1984).

## III.

■ L & B's attempt to challenge the manner of the informal election must fail. Bower and Lofton had prior experience with union activity and had, upon organization of L & B Cooling, requested that their regular employees refrain from organizing until the operation became profitable. Furthermore, neither Bower nor Lofton objected to the manner of the informal election or the result at the time of the election. Although 29 U.S.C. § 159(e) provides that an NLRB-conducted election is the "preferred method," the Supreme Court, in *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), held that

a majority status for bargaining purposes. could be established by other means. *See also, Sullivan Electric Co. v. N.L.R.B.,* 479 F.2d 1270 (6th Cir.1973); *N.L.R.B. v. Broad Street Hospital and Medical Center,* 452 F.2d 302 (3rd Cir.1971); *N.L.R.B. v. Western Meat Packers, Inc.,* 350 F.2d 804 (10th Cir.1965).

Finally, L & B contends that taking the plain wording of the Board's order, the unit "[m]ight well include all locations (in Colorado, New Mexico and Arizona where L & B operates) so that once again it cannot be said to be an appropriate unit in which to count a majority." (Brief of L & B, pp. 9, 10.) We disagree. The Board's order identifies L & B as "L & B Cooling, Inc., Center, Colorado," and, as heretofore noted, directs the posting of the remedial notice only at the company's cooling facility in Colorado. The Board has stated that "accordingly it is clear that the bargaining rights conferred upon the Union are limited to its representation of the production unit at Center." (Brief for NLRB, pp. 4, 5.)

The Board's order is enforced.