**Sam BENNION and Earl Garr d/b/a Hillsdale Inn, a partnership, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 83–2240.

United States Court of Appeals, Tenth Circuit.

June 12, 1985.

Karen E. Ford (Alan S. Levins, San Francisco, Cal., with her on briefs), Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioners.

Elinor Hadley Stillman, Atty. (Elliott Moore and Lynne E. Deitsch, Washington, D.C., with her on brief), N.L.R.B., Washington, D.C., for respondent.

Steven L. Stemerman, David, Cowell & Bowe, San Francisco, Cal., on brief, for amicus curiae Bartenders and Culinary Workers Union, Local 340.

Before BARRETT and LOGAN, Circuit Judges, and SAFFELS, District Judge.*

SAFFELS, District Judge.

This matter is before the court on cross petitions for review and enforcement of an order of the National Labor Relations Board [hereinafter the Board], finding that petitioners engaged in unfair labor practices by repudiating collective bargaining agreements reached through multi-employer bargaining. Petitioners, Sam Bennion and Earl Garr, d/b/a Hillside Inn, a partnership, contend the agreements are not binding because the negotiations were entered and agreements reached without their real or apparent authority. The Decision and Order of the Board was entered August 26, 1983, and by that order the Board substantially adopted the rulings, findings and conclusions of the Administrative Law Judge [hereinafter ALJ], dated September 26, 1983.

■ This court has jurisdiction in that the aggrieved person, Sam Bennion, resides in Utah. 29 U.S.C. 160(f). In our review, the Board's findings of fact are conclusive and binding if supported by substantial evidence on the record considered as a whole. *Crane Sheet Metal, Inc. v. N.L.R.B.*, 675

---

* Honorable Dale E. Saffels, United States District Judge, District of Kansas, sitting by designation.

F.2d 256, 257 (10th Cir.1982). The experienced judgment of the Board on questions of law is entitled to great weight. *Id.* at 257.

Sam Bennion is seventy-percent (70%) owner of the Hillsdale Inn in San Mateo, California. His son-in-law, Earl Garr, owns the other thirty percent (30%). Certain of the hotel employees are represented by Local 856, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [hereinafter Local 856], and by Local 340, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO [hereinafter Local 340]. These unions were the aggrieved parties before the Board. From the time of Bennion's purchase of the hotel in about 1970 until late 1975, Garr operated the hotel and Bennion was a silent partner. Beginning in 1975 Bennion took over active management of the hotel, although he continued to reside out of state. The hotel's operations were conducted through resident managers. Until 1975, the hotel had been a member of the San Mateo Hotel and Restaurant Owners' Association [hereinafter Association], which, among other things, engaged in collective bargaining on behalf of its members.

In 1975, Bennion withdrew the Inn's membership from the Association, in writing. Nevertheless, in 1976, the hotel's resident manager signed an authorization for the Association to bargain with Local 340. Thereafter, in February, 1977, Bennion wrote a letter to Andy Castle, Executive Director of the Association, informing him that the Association had no authority to act on behalf of the Inn. Bennion wrote similar letters at the same time to Locals 340 and 856. There is a dispute over whether these letters were received by the unions, but the court finds that dispute immaterial to the issues before it, as much changed in the three years following the letters.

Subsequent to Bennion's letters to the unions and the Association, the previously-initiated negotiations were concluded and on February 22, 1977, a collective bargaining agreement was executed with Local 340, effective retroactively to January 1, 1977, and running until December 31, 1981.[1] In March, 1977, Bennion hired new resident managers, Robert Robards, his wife, Nevada Robards, and their daughter, Mrs. Dawson. Within about a month, the Robards and Dawson were fired for ignoring Bennion's direct orders to avoid dealings with Castle. After their termination, Mrs. Dawson pleaded with Bennion to give them another chance, and Bennion agreed to reinstate them. They retained their positions until May, 1981, when they were fired for alleged thefts from Bennion.

In April, 1977, Robert Robards signed an authorization permitting Castle to represent the hotel in negotiations with Local 340. Thereafter, the Robards maintained a high profile in the Association. In early 1979, the Robards retained a lawyer named Cooper to settle a dispute with Local 340 regarding shortages in payments by the Inn to the union's health and welfare fund. On April 9, 1979, Mrs. Robards sent a check to Local 340 for Two Thousand Dollars ($2,000) in full settlement of the shortages. In early 1980, Mrs. Robards sat on an adjustment board established pursuant to the collective bargaining agreement. In 1980, Local 340 and the Association jointly agreed to an early reopener on the existing contract, and Mrs. Robards authorized Castle to represent the Hillsdale Inn. The ALJ found that Local 340 believed the Association represented the Hillsdale Inn. During the summer of 1981, Bennion, through his new manager, Burns, stopped compliance with the current agreement. Local 340 then filed these charges with the Board.

As to Local 856, a strike of the hotel was averted in 1977 when Robards told Local 856 that the Inn would accept the contract agreed to by the Association. When the

---

**1.** The ALJ agreed with Local 340's claim that Castle acted properly in ignoring Bennion's letter for purposes of negotiation, relying on *Retail Associates, Inc.,* 120 N.L.R.B. 388 (1958), that once multi-employer negotiations have begun, an employer cannot withdraw authorization absent mutual consent or special circumstances.

contract between the union and the Association was reached, the Robards refused to sign. Local 856 filed charges and Robards asked for and received permission from Bennion to retain attorney Cooper, who, the Robards explained, had been recommended by Castle. The outstanding charges were settled and the agreement was signed by Mr. Robards as General Manager, whereby the Inn agreed to bargain and embody any agreement reached into a signed agreement. The parties did reach a signed agreement effective between October 1, 1978, and June 30, 1979. Prior to the expiration of the contract, Castle told the union that the Hillsdale Inn had joined the union once again. New negotiations began in May, 1980, between the Association and Local 856 and the next month Castle tendered to the union a list of Association members for whom he was authorized to negotiate a new agreement. The name of the Hillsdale Inn, followed by Nevada Robards' signature, was listed. An agreement was reached effective through June 30, 1983. In July, 1981, the Hillsdale Inn ceased making pension and trust fund contributions. The union found the Robards no longer were employed at the hotel. Local 856 then filed charges with the Board.

There are several additional relevant facts. In November, 1978, the Association moved its offices to the Hillsdale Inn despite Bennion's earlier statements that Castle was to stay away from the Hillside Inn. Bennion became aware of the Association offices in 1979, but did nothing about it until 1981. The record of payments of Association dues is sporadic. On November 14, 1977, on request of Bennion, the Association refunded Four Hundred Dollars ($400) paid by the Robards "in error." On March 23, 1978, Robards wrote to the Association dropping membership and the Association charged off Two Hundred Fifty Dollars ($250) then due and owing. When the Association moved into the Hillsdale Inn in November, 1978, the Robards rejoined the Association and paid back dues of Five Hundred Dollars ($500) by check.

Subsequent quarterly dues were paid in cash.

■ The test to determine whether an employer has delegated to a multi-employer unit the apparent authority to negotiate a collective bargaining agreement is well-established in the federal courts. "The test is whether the employer has indicated from the outset an unequivocal intention to be bound by group action and whether the union has been notified of the existence of the group and the delegation of the bargaining authority to it and has assented to and entered upon negotiations with the group's representative." *Crane Sheet Metal, Inc. v. N.L.R.B., supra,* 675 F.2d 256, 259 (10th Cir.1982).

Bennion contends that he did not give his unequivocal consent to multi-employer bargaining. Further, he contends that the unions and Castle were aware that he did not give his unequivocal consent, and that a principal cannot be bound by the unauthorized acts of an agent if the third party dealt with has knowledge of the agent's lack of authority. *Miller v. Premier Corp.,* 608 F.2d 973 (4th Cir.1979); *Universal Computer Systems, Inc. v. Medical Services Ass'n. of Pennsylvania,* 474 F.Supp. 472 (M.D.Pa.1979), *aff'd.* 628 F.2d 820 (3rd Cir.1980). See also *DeBoer Construction, Inc. v. Reliance Ins. Co.,* 540 F.2d 486 (10th Cir.1976), *cert. denied* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Stone v. First Wyoming Bank N.A. Lusk,* 625 F.2d 332 (10th Cir.1980). Bennion relies on his 1977 letters to Castle and the unions and his oral instructions to the Robards.

■ It cannot be denied that Bennion did not "unequivocally" consent to the Association's representation of the Inn during negotiations with the unions. His letters in 1977 establish that at least at that point in time he was the only person authorized to negotiate on behalf of the Hillsdale Inn. The Board found, based on substantial evidence before it, that Bennion's initial actions in 1977 to disavow the co-managers' authority were diluted and ultimately overshadowed by Bennion's course of conduct

over the next three years. Our review of the record indicates that the Board's findings are supported by substantial evidence. The Board could reasonably find on the record herein that the Robards possessed apparent authority to authorize the Association to bargain on behalf of the Inn, and the Association had the apparent authority to bind the Inn to collective-bargaining agreements negotiated by the Association. The unions and the Association were justified in relying on this course of conduct and the apparent authority of the Robards. The record does not support Bennion's argument that the third parties had knowledge of a lack of authority.

■ Bennion's argument that he personally must have given unequivocal consent to the multi-employer unit misreads the requirement of *Crane Sheet Metal, supra.* Under *Crane,* the *employer* must give unequivocal consent to the bargaining unit. The employer may act through its own managerial agents with apparent authority to bind the principal. Under Section 2(13) of the Labor Management Relations Act, 29 U.S.C. 152(13), in determining whether a person is acting as agent of another person, "the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." This court has held that Section 2(13) opens the way for the application of general rules of agency and particularly the rules of apparent authority. *N.L.R.B. v. Johnson Sheet Metal, Inc.,* 442 F.2d 1056, 1060 (10th Cir.1971); *United Steel Workers of America v. CCI Corp.,* 395 F.2d 529, 532 (10th Cir.1968), *cert. denied* 393 U.S. 1019, 89 S.Ct. 627, 21 L.Ed.2d 564 (1969). In *Travelers Ins. Co. v. Morrow,* 645 F.2d 41, 44–45 (10th Cir.1981), this court stated, "To establish that an agent had apparent authority to bind its principal it must be shown that the principal knowingly permitted the agent to exercise the authority in question, or in some manner manifested its consent that such authority be exercised."

The record reveals that the absentee owner of the Hillsdale Inn, Bennion, permitted the co-managers of the Inn authority to bind the Inn in a number of matters, including collective bargaining agreements. Despite Bennion's initial protestations, the record reveals no efforts by Bennion to become involved in labor negotiations and few inquiries by him in that regard. For a man of his business experience, with knowledge that union locals represented his employees, it is inconceivable that he was unaware of contract negotiations or Association involvement by his co-managers. Further, Bennion was aware for two years that the Association's offices were located in the Hillsdale Inn, and this lends some inference that Bennion was not completely serious about his co-managers disassociating themselves from the Association.

Our review thus finds substantial evidence to support the Board's finding that petitioners knowingly allowed a situation to continue for three years during which time the Inn's managers signed authorizations for the Association to bargain on behalf of the Inn, participated in negotiations conducted by the Association, observed the terms and conditions of collectively bargained agreements negotiated by the Association, and used a lawyer recommended by the Association to negotiate a settlement agreement with one of the unions herein with Bennion's knowledge and consent. There is sufficient evidence from which the Board could also reasonably determine that Bennion was aware of these activities by his co-managers.

Based on the substantial evidence in support of the Board's decision, the Board's petition for enforcement is granted.