931 F.2d 63
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
APPARATUS SERVICE, INC., Respondent.
 No. 89-9558.
 United States Court of Appeals, Tenth Circuit.
 April 23, 1991.
 
 Before STEPHEN H. ANDERSON and TACHA, Circuit Judges, and KANE,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H., Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 The National Labor Relations Board (Board) petitions this court for enforcement of its order adopting a decision of the Administrative Law Judge (ALJ), who had found respondent Apparatus Service, Inc. (ASI) guilty of three separate violations of the National Labor Relations Act and had ordered relief accordingly. Specifically, the Board held ASI had (1) interfered with employees' organizational rights by interrogating them about union affiliation, (2) wrongfully refused to bargain collectively with the International Union of Electrical Workers Local 1126 (IUE), its employees' certified union, and (3) maintained an improper policy prohibiting employees from discussing their salaries, all in violation of 29 U.S.C. Sec. 158(a)(1) and (5). In response to the Board's petition, ASI challenges each of these holdings.
 
 
 3
 When reviewing an order of the Board, we "should grant enforcement if the Board correctly interpreted and applied the law and if its findings are supported by substantial evidence in the record, considered in its entirety." YMCA of Pikes Peak Region, Inc. v. NLRB, 914 F.2d 1442, 1449 (10th Cir.1990) (quoting Presbyterian/St. Luke's Medical Center v. NLRB, 723 F.2d 1468, 1471 (10th Cir.1983)). If substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate," exists to support the Board's findings on questions of fact, they are conclusive under 29 U.S.C. Sec. 160(e). Presbyterian/St.Luke's, 723 F.2d at 1471 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)). While our review of questions of law is not so circumscribed, nevertheless "the experienced judgment of the Board is entitled to great weight." Id. at 1472 (quoting Crane Sheet Metal, Inc. v. NLRB, 675 F.2d 256, 257 (10th Cir.1982)). With these standards in mind, we turn to the specific issues resolved by the Board.
 
 
 4
 Questioning of employees concerning union activities, "though not per se violative of the Act, is prohibited by section [158(a)(1) ] if accompanied by coercion, threat, or restraint." Presbyterian/St.Luke's, 723 F.2d at 1475. "The test is not whether employees were actually coerced, but whether the questioning tended to be coercive." Id. Thus, "[a] violation is established 'if the questions asked, when viewed and interpreted as the employee must have understood the questioning and its ramifications, could reasonably coerce or intimidate the employee with regard to union activities.' " Id. (quoting NLRB v. Rich's Precision Foundry, Inc., 667 F.2d 613, 624 (7th Cir.1981)). This issue necessarily involves an exercise of judgment on the basis of facts, inferences and credibility assessments that lie peculiarly in the province of the Board, whose determination in this regard will not be disturbed if there is substantial evidence to support it. NLRB v. Wilhow Corp., 666 F.2d 1294, 1300 (10th Cir.1981); Groendyke Transport, Inc. v. NLRB, 530 F.2d 137, 144 (10th Cir.1976).
 
 
 5
 At a time when ASI was challenging the representational status of the previously certified IUE, ASI president and general manager Lawrence Fuller interviewed four newly hired employees. The intentions of these employees with respect to union representation were especially important, since they constituted a significant percentage of the employees in the pertinent collective bargaining unit. In the interviews, Fuller expressed his erroneous opinion that ASI was not a union shop and asked some or all of the new hirees whether they were affiliated with a union during their previous employment. See Rec. Vol. I (transcript of hearing before ALJ on November 30, 1988) at 19-25, 39-40. While the evidence of coercion here is certainly not overwhelming, in accordance with the principles set out above, we affirm the Board's judgment on this factual matter in light of the context, both specific (the pressure inherent in any interview between a new employee and the company president) and broad (the background of union dispute), and the absence of any evidence that assurances against reprisal were given. See Groendyke Transport, Inc., 530 F.2d at 144.
 
 
 6
 ASI next contends that its refusal to bargain with IUE was justified on the basis of its good faith doubt about IUE's majority status.[1] This question of fact, see NLRB v. Imperial House Condominium, Inc., 831 F.2d 999, 1007 (11th Cir.1987), arises against the background of a rebuttable presumption of IUE's continuing majority status following its certification in connection with ASI's predecessor (ASI has not disputed its successor status). See Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 41 (1987). "To avail itself of the good faith doubt defense, an employer must produce 'some objective evidence to substantiate [its] doubt of continuing majority status.' Whether the evidence demonstrates a sufficient basis to doubt the union's status must be determined in light of the totality of the circumstances in each case." Johns-Manville Sales Corp. v. NLRB, 906 F.2d 1428, 1431 (10th Cir.1990) (citations and footnote omitted).
 
 
 7
 The only potentially valid bases asserted by ASI for its doubts were: (1) anti-union sentiments expressed by the four newly hired employees to Fuller and (2) negative statements about the union's efficacy made by two of the five holdover employees and related to Fuller by the shop foreman. Rec.Vol. I at 30, 101-02. In light of our affirmance of the Board's finding of coercion in connection with Fuller's communication with the new employees, we also agree that whatever views they expressed to Fuller could not properly supply the objective indicia of anti-union employee sentiment required to overcome the presumption in favor of IUE. See NLRB v. Burns Int'l Sec. Servs. Inc., 406 U.S. 272, 279-80 (1972) ("It goes without saying, of course, that [employer] was not entitled to upset what it should have accepted as an established union majority [pursuant to presumption of continuing majority status] by soliciting representation cards for another union and thereby committing [an] unfair labor practice...."). As to the holdover employees' alleged dissatisfaction with the union, the two employees named by Fuller both testified at the hearing and denied making any such representations, Rec.Vol. I at 48 (Napoleon Lewis) and 65 (Henry Thompson), though one of the two did state that he had inquired in a facially neutral manner about Fuller's preferences regarding the union, Rec.Vol. I at 69-71. Furthermore, as also noted by the Board, Fuller was presented with a petition affirming IUE's representation signed by all members of the unit, including the four new employees he had interviewed, and thereafter nevertheless responded to union demands for negotiation with a letter advising IUE of ASI's position that the union no longer represented a majority of unit employees. We affirm the Board's determination that, under these circumstances, ASI breached its statutory duty to bargain with the union.[2]
 
 
 8
 Finally, ASI does not challenge the Board's finding that its prohibition on employee disclosures of salary information was improper, but only the Board's determination that the policy constitutes a statutory violation despite ASI's assertion that it is not unequivocally mandatory (i.e., the policy says employees "should not" discuss their salaries) and has not resulted in any employee discipline. We agree with the Board that the proscribed conduct is protected, see NLRB v. American Spring Bed Mfg. Co., 670 F.2d 1236, 1242 (1st Cir.1982), and that the prohibition is stated in sufficiently compelling terms to chill the undesired activity (which, of course, may be the very reason disciplinary enforcement action has evidently not been necessary). ASI has not cited us to any authority requiring reversal of the Board's experienced judgment on this matter. Indeed, the Board's determination here appears to be affirmatively supported, rather than undercut, by its consistency with the Board's prior decision in W.R. Grace Co., 240 N.L.R.B. 813, 1978-79 NLRB (CCH) p 15568 (1979), in which a similar policy was held to be a violation of the act despite the employer's assertion that the policy was voluntary and the absence of evidence that any employee had been disciplined for noncompliance.
 
 
 9
 For the foregoing reasons, we grant enforcement of the Board's order.
 
 
 
 *
 Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 ASI does not dispute that the union did in fact enjoy majority support among the employees in the bargaining unit
 
 
 [2]
 This case does not present the problem identified in Johns-Manville Sales Corp., where we held the Board had erred in imposing, at least in practical effect, a requirement that the employer establish good faith doubt by the express statements of a majority of individual workers. Id. at 1432-33. Here the Board properly relied on consensus affirmation of union allegiance, not the absence of express majority repudiation